George T. **MORAY**, Appellant,

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–630.

United States Court of Veterans Appeals.

June 11, 1993.

Susan Paczak, Pittsburgh, PA, for appellant.

James A. Endicott, Jr., Gen. Counsel, Norman Cooper, Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Craig M. Kabatchnick, Washington, DC, were on the pleadings for appellee.

Before KRAMER, FARLEY and MANKIN, Associate Judges.

MANKIN, Associate Judge:

George T. Moray appeals the January 13, 1992, Board of Veterans' Appeals (BVA or Board) decision which denied entitlement to service connection for retinitis pigmentosa. (Retinitis pigmentosa is a disease marked by progressive loss of retinal response, retinal atrophy, attenuation of retinal vessels, and clumping of pigment, with contraction of field of vision. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1456 (27th ed. 1988).) The Secretary of Veterans Affairs filed a motion for summary affirmance. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). We affirm the BVA decision.

## I. Background

The veteran served in the United States Army from March 1951 to July 1951. His induction examination reflects that his distant vision was 20/40 bilaterally. In May 1951, the veteran complained of pain in his eyes and problems with his vision at night.

On May 23, 1951, examination of the veteran's eye revealed clumping of pigment in each eye over the nasal quadrant. The veteran was diagnosed with retinitis pigmentosa, and separation from service was recommended. During this examination the veteran related a history of night blindness for one and one-half years. In June, Mr. Moray submitted a request for discharge. In July, a medical board concluded that the veteran's retinitis pigmentosa had existed prior to service and that it precluded further military service. The medical board recommended separation from service. The veteran was honorably discharged on July 30, 1951.

In September 1957, the veteran filed an application for compensation or pension for his eye disorder. On November 13, 1957, the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) denied service connection, finding that the induction examination had revealed defective vision and there was "no incident in service that aggravated the veteran's eye condition."

In August 1990, the veteran's representative requested reopening of the claim for service connection for retinitis pigmentosa. A confirmed rating decision was issued. On April 5, 1991, an RO personal hearing was held. The veteran testified that he had had a slight problem with night vision before entering service, but that his condition had worsened after he fell into a hole during basic training. The veteran also testified that during service he used the chemical carbon tetrachloride to clean his weapon. Subsequently, Mr. Moray's representative related that there was an "affinity" between this chemical and the veteran's disorder. The hearing officer denied service connection for retinitis pigmentosa. The BVA also denied the veteran's claim. Mr. Moray filed a timely appeal to this Court.

## II. Analysis

### A. Clear and Unmistakable Error

■ In order for there to be a valid claim of "clear and unmistakable error," there must have been an error in the prior adjudication of a claim. *Russell v. Principi*, 3

Vet.App. 310, 313 (1992) (en banc). Either the correct facts, as they were known at the time, were not before the adjudicator, or the statutes or regulations extant at the time were incorrectly applied. *Id.* The veteran must assert more than a disagreement as to how the facts were weighed. *Id.*

■ The veteran contends that the November 13, 1957, RO decision contained clear and unmistakable error (CUE) because the presumption of soundness was not considered and the veteran's disorder was aggravated by service. The Board adjudicated the CUE issues and concluded that CUE did not exist in the 1957 RO decision. Once the BVA has considered CUE in previous adjudications, the Court's review of this consideration is limited to determining whether the BVA decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." *See* 38 U.S.C.A. § 7261(a)(3)(A) (West 1991); *Russell*, 3 Vet.App. at 315.

Mr. Moray's contentions are valid CUE claims because he asserts that the statutory provisions extant at the time of the 1957 RO decision were incorrectly applied. The veteran claims that the presumption of sound condition was not applied. At the time of the 1957 rating decision, the statute describing this presumption provided that:

> *Every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.*

Veterans Benefits Act of 1957, Pub.L. 85–56, § 312, 71 Stat. 96 (1957) (emphasis added) (now codified at 38 U.S.C.A. § 1111 (West 1991) without substantive change). In evaluating the veteran's CUE claim, the Board found that clear and unmistakable evidence showed that the veteran's disorder had existed prior to service. *George T.*

*Moray*, BVA ____, at 4 (Jan. 13, 1992). The Board based this finding on the medical evidence, the medical board finding, the veteran's age, and his medical history.

Additionally, Mr. Moray contends that his eye disorder was aggravated by service. The applicable statute in 1957 provided:

A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during active service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

Veterans Benefits Act of 1957, Pub.L. 85–56, § 353, 71 Stat. 102 (1957) (now codified at 38 U.S.C.A. § 1153 (West 1991) without substantive change). The BVA found that the veteran's condition was not aggravated by service. The Board stated:

During service, the veteran gave a history of very poor vision prior to service being unable to recognize his friends. Uncorrected visual acuity was 20/30 in the right eye and 20/30 in the left left [sic] eye, essentially the same as it had been prior to service. He applied for benefits in 1957; he did not report receiving any post service treatment. We believe the finding that there was no increased severity during service was reasonable given the short period of active service and the rather full-blown symptomatology of retinitis pigmentosa. Since there was no increase in severity during service, the denial of service connection on the basis of aggravation is not erroneous.

*Moray*, BVA ____, at 5.

The medical evidence indicates that any increase in severity was due to the natural progress of retinitis pigmentosa. In May 1951, the VA consulting physician stated that this disease is "progressive." In June 1951, the medical board also found the disorder to be "progressive." Thus, the Court holds that specific findings were made that the increase in disability was due to the natural progress of the disease, and therefore, the veteran's eye condition was not aggravated in service, pursuant to 38 U.S.C.A. §§ 1153 and 1111. In addition, the Board's conclusion that clear and unmistakable evidence demonstrated that the eye condition had existed prior to service is supported by the evidence in the record. Therefore, we hold that the Board's decision that found no CUE in the 1957 RO decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ."

## B. New and Material Evidence

Under 38 U.S.C.A. § 7104(b) (West 1991), a final decision by the BVA on a given claim "may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." One exception to the § 7104(b) rule is 38 U.S.C.A. § 5108 (West 1991) which states, "If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." This Court has established a two-part analysis that the BVA must utilize when a veteran seeks to reopen a claim based upon "new and material" evidence. First, the BVA must determine whether the evidence is "new and material." *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). "New evidence is not that which is merely cumulative of other evidence on the record." *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). For evidence to be material, it must be "relevant and probative" and "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Id.* Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old. *Manio*, 1 Vet.App. at 145. The determination whether evidence submitted to reopen a previously disallowed claim is new and material under 38 U.S.C.A. § 5108 is a question of law which this Court reviews de novo. *Colvin*, 1 Vet.App. at 174.

Mr. Moray contends that testimony presented at an April 5, 1991, RO hearing

contained new and material evidence. During this hearing, the veteran responded affirmatively to a series of questions by his representative to establish that he had been exposed to carbon tetrachloride while cleaning weapons. Subsequently, the representative stated:

> For-the-record, I'm going to state this for-the-record, Mr. Moray. For the record, there is an affinity with retinitis pigmentosa and the chemical carbon tetrachloride. This veteran was exposed to it.

In an informal hearing presentation before the BVA, a second representative refrained from specifically claiming that the veteran's disorder was caused by exposure to carbon tetrachloride; however, that he implied causation is evident from the following statement:

> It was also pointed out that the veteran used carbon tetrachloride to clean his weapons and machinery. He was exposed to this chemical agent on more than one occasion. It was after exposure to this chemical that the diagnosis of retinitis pigmentosa was made.

The question presented in this case is whether the veteran's submission of lay assertions of medical causation is "evidence" sufficient to reopen his claim for service connection. In *Grottveit v. Brown*, 5 Vet.App. 91 (1993), the Court noted that the type of evidence necessary to establish a well-grounded claim depended upon the nature of the determinative issue:

> "[T]he [VA] benefits system requires more than just an allegation; a claimant must submit supporting evidence. Furthermore, the evidence must justify a belief by a fair and impartial individual that the claim is plausible." *Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992). Our determination whether a claim is well grounded is a matter of law. *King v. Brown*, 5 Vet.App. 19 (1993). The quality and quantity of the evidence required to meet this statutory burden of necessity will depend upon the issue presented by the claim. Where the issue is factual in nature, e.g., whether an incident or injury occurred in service, competent lay testimony, including a veteran's solitary testimony, may constitute suffi-

cient evidence to establish a well-grounded claim under [38 U.S.C.A.] section 5107(a). *See Cartright v. Derwinski*, 2 Vet.App. 24 (1991). However, where the determinative issue involves medical causation or a medical diagnosis, competent medical evidence to the effect that the claim is "plausible" or "possible" is required. *See Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). A claimant would not meet this burden imposed by section 5107(a) merely by presenting lay testimony because lay persons are not competent to offer medical opinions. *Espiritu v. Derwinski*, 2 Vet.App. 492 (1992). Consequently, lay assertions of medical causation cannot constitute evidence to render a claim well grounded under section 5107(a); if no cognizable evidence is submitted to support a claim, the claim cannot be well grounded. *Tirpak*, 2 Vet.App. at 611.

*Grottveit*, 5 Vet.App. at 92; *see also Kates v. Brown*, 5 Vet.App. 93 (1993); *Suttman v. Brown*, 5 Vet.App. 127 (1993).

 If lay assertions of medical causation will not suffice initially to establish a plausible, well-grounded claim, it necessarily follows that such assertions cannot serve as the predicate to reopen a claim under 38 U.S.C.A. § 5108. "'New and material evidence' is, by its nature, well-grounded, i.e., evidence that, if believed, would provide a 'reasonable possibility' that the outcome would be changed." *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992). Just as the BVA must point to a medical basis other than its own unsubstantiated opinion (*Colvin*, 1 Vet.App. at 175), the veteran cannot meet his initial burden by relying upon his own, or his representative's, opinions as to medical matters. *Grottveit*, slip op. at 3–4. Nor can the veteran meet the "new and material evidence" burden of 38 U.S.C.A. § 5108 by relying upon such "evidence."

### III. Conclusion

Accordingly, the January 13, 1992, BVA decision is AFFIRMED.