Citation Nr: 1132148 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 06-10 647 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

Entitlement to service connection for hepatitis C.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

J. Juliano, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April 1974 to May 1975.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) located in Nashville, Tennessee.

In April 2010, the Board remanded the Veteran's claim for further development. Such development has been completed and associated with the claims file, and this matter is returned to the Board for further review.


FINDING OF FACT

The Veteran's hepatitis C was not incurred in or aggravated by active service.


CONCLUSION OF LAW

Service connection for hepatitis C is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2010).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Veterans Claims Assistance Act of 2000 (VCAA)

With respect to the Veteran's claim of entitlement to service connection for hepatitis C, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5102, 5103(a), 5103A, 5106 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.159, 3.326(a) (2010).

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is generally required to "notify the claimant and the claimant's representative, if any, of any information and any medical or lay evidence not previously provided . . . that is necessary to substantiate the claim." 38 U.S.C.A. § 5103(a)(1) (West Supp. 2010). As part of that notice, VA must "indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary . . will attempt to obtain on behalf of the claimant." 38 U.S.C.A. § 5103(a)(1) (West Supp. 2010). The requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between the veteran's service and the disability, degree of disability, and effective date of the disability. See Dingess v. Nicholson, 19 Vet. App. 473 (2006), aff'd sub nom. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007).

The Board finds that an August 2004 VCAA letter fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a) (West Supp. 2010); 38 C.F.R. § 3.159(b)(1) (2010). The letter informed the Veteran of what information or evidence was needed to support his claim, what types of evidence the Veteran was responsible for obtaining and submitting to VA, and which evidence VA would obtain. 

Because the Veteran's claim is being denied, as explained below, the Board finds that whether the Veteran received notice regarding how VA assigns disability ratings and effective dates is moot. See Dingess, supra. In any event, the Board notes that a Dingess notice explaining how VA assigns disability ratings and effective dates was attached to the April 2007 Supplemental Statement of the Case (SSOC), and the Veteran's claim was readjudicated by way of a June 2011 SSOC.

The Board also concludes that VA's duty to assist has been satisfied. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). The Veteran's service treatment records, VA treatment records, and private treatment records are all in the claims file. In that regard, the Board acknowledges that the Veteran identified certain VA treatment records dated in 1976 at the Memphis, Tennessee VA medical center (VAMC) as relating to his claim. Based thereon, in January 2007, the RO requested copies of all of the Veteran's outstanding treatment records from the Memphis, Tennessee VAMC dated from 1975 to 1977. In response, the Memphis VAMC sent to the RO copies of all of its treatment records dated through June 1978, and based on the Board's review of these records, it is clear that the Veteran made a typographical error on his Form 21-4142 when he identified these records as being dated in "1976" and that, rather, he intended to write "1978," as records dated from May to June 1978 reflect that he received a hospital course of treatment for viral hepatitis at the Memphis, VAMC at that time. The Veteran also identified VA treatment records from the Long Beach, California VAMC dated in 1986, and records from the Loma Linda, California VAMC (Riverside) dated between 1991 and 1992 that were obtained (through January 1993) and associated with the claims file.

VA's duty to assist also generally includes the duty to provide a VA examination or obtain a medical opinion when necessary to make a decision on the claim. See 38 C.F.R. § 3.159(c)(4) (2010). In April 2010, the Board remanded the Veteran's claim so that he could be afforded a VA examination. Pursuant to the Board's remand directive, the Veteran was provided with a VA examination in May 2010. The Board finds the May 2010 VA examiner's report to be thorough and adequate upon which to base a decision with regard to the Veteran's claim. The VA examiner reviewed the entire claims file, noted the Veteran's reported hepatitis C risk factors, and provided adequate reasons and bases for her conclusions. Therefore, the Board finds that the record contains sufficient evidence to make a decision with regard to this claim. The Board does acknowledge that the VA examiner opined, in short, that she could not relate the Veteran's hepatitis C to service without resorting to mere speculation. In this regard, the Board recognizes that the Court has held that, in some circumstances, where an examiner is unable to give an opinion without resorting to mere speculation, there is no opinion offered. See Nieves-Rodriquez v. Peake, 22 Vet. App. 295 (2008). At the same time, the Court has clarified that "an examiner's conclusion that a diagnosis or etiology opinion is not possible without resort to speculation is a medical conclusion just as much as a firm diagnosis or a conclusive opinion. . . [B]efore the Board can rely on an examiner's conclusion that an etiology opinion would be speculative, the examiner must explain the basis for such an opinion or the basis must otherwise be apparent in the Board's review of the evidence." Jones v. Shinseki, 23 Vet. App. 382, 390 (2010). In this case, the Board notes that the May 2010 examiner explained that the basis for her opinion was the fact that the Veteran reported hepatitis C risk factors in service including IV drug use, sharing razors, and unprotected sex, and that his hepatitis C could be related to any of these (and, as explained below, service connection may not be granted for diseases due to willful misconduct such as IV drug use), or his post-service history of lupus. Therefore, as the basis for the examiner's opinion was explained, the Board finds that the VA examination report is sufficient upon which to base a decision.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), reversed on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

II. Analysis

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Service connection may be established for a disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C.A. § 1110 (West 2002). That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b) (2010). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d) (2010).

To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service" - the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

The Veteran served on active duty from April 1974 to May 1975. He claims that he incurred hepatitis C as a result of IV drug use, unprotected sex, and sharing razors in service. See Statement, August 2004; cf. VA Treatment Records, June 2004 (denied IV drug use but reported social history of snorting cocaine). He also reported to the May 2010 VA examiner that he received air gun injections in service (that may have caused his hepatitis C).

As an initial matter, the Board notes that to the extent the Veteran claims that his current hepatitis C is related to IV drug use in service, the Board notes that payment of compensation for a disability that is a result of a veteran's own alcohol or drug abuse is prohibited by law. 38 U.S.C.A. § 105(a) (West 2002); 38 C.F.R. §§ 3.1(m), 3.301(d) (2010) (providing that an injury or disease incurred during active service will not be deemed to have been incurred in line of duty if the injury or disease was a result of the person's own willful misconduct, including abuse of alcohol or drugs). Therefore, to the extent that the Veteran's hepatitis C may be related to in-service IV drug use, there may be no service connection.

Recent VA treatment records dated through February 2007 reflect that the Veteran has been followed by the hepatology department for diagnosed hepatitis C.

The Board notes that the Veteran's service treatment records are silent as to any diagnosis of hepatitis or any other relevant findings or complaints, including no record of any sexually transmitted diseases or air gun injections.

The first record of any hepatitis is a June 1978 VA treatment record that reflects that the Veteran was hospitalized from May to June 1978 at the VAMC in Memphis, Tennessee for diagnosed viral hepatitis. The Board also notes that there is no notation regarding any hepatitis risk activity reported by the Veteran to the VA clinicians during this hospitalization for hepatitis, or any other notation regarding the etiology of his hepatitis. As noted in the VCAA section above, the Board notes that the Veteran mistakenly reported on a Form 21-4142 that he was treated in 1976 rather than 1978, and all of his treatment records have been obtained from the Memphis VAMC dated from 1975 to 1978, which reflect that the only treatment for hepatitis was in 1978. 

A May 1986 VA treatment record from the Long Beach, California VAMC reflects that the Veteran complained of substernal pain, that his liver function test was abnormal, and that a hepatitis B test was planned that day, although there is no record of any such test or other follow up.

A July 1998 VA treatment record reflects that the Veteran complained of epigastric pain for the past year. A diagnosis of "abdominal pain: sounds like hepatitis" was recorded, and liver function testing, a hepatitis series, and H pylori testing were planned. The July 1998 serology report reflects that the Veteran tested positive for the hepatitis C antibody. The Board acknowledges the Veteran's reports that he was not informed until years later that he tested positive for hepatitis C in 1998, and in that regard, the Board notes that there is no record of the Veteran having been informed regarding his test results or any further treatment in 1998 or shortly thereafter.

A November 2003 private treatment record reflects that the Veteran complained of experiencing fatigue, dizziness, and stomach pain, and that a serology report reflects that the Veteran's test result was reactive for the hepatitis C antibody; again, however, there is no record of follow up with the Veteran.

May 2004 VA treatment records reflect that the Veteran admitted himself for hospitalization due to loss of appetite, feeling shaky, cold, and headaches. His liver functioning test was elevated, and a notation of "etiology uncertain" was made and a diagnosis of probable viral illness was recorded. A plan to check the Veteran's hepatitis panel was noted. A May 2004 serology report reflects that the Veteran tested positive for the hepatitis C antibody. Subsequent VA treatment records dated from May to June 2004 relating to the Veteran's hospitalization reflect that he reported that he was unaware that he tested positive for the hepatitis C antibody back in 1998, although the Veteran did report a history of hepatitis "a number of years ago," treatment for "a liver problem" at a VA medical center in California in 1986 (erroneously transcribed as "1985"), and a history of snorting cocaine but no IV drug use.

As noted above, recent VA treatment records reflect that the Veteran is currently followed by the VAMC hematology department for his diagnosed hepatitis C. See, e.g., VA Treatment Record, February 2007.

The Board also acknowledges that an October 1988 VA treatment record reflects that the Veteran reported a history of a rash on his face for one year, and that a diagnosis of lupus was recorded. Subsequent VA treatment records from the Loma Linda, California VAMC dated from October 1990 to January 1993 reflect that in January and March 1993, the Veteran reported a history of lupus (and substance abuse). Also, private treatment records dated from October to November 1999 reflect diagnosed discoid lupus.

A May 2010 VA examination report reflects the Veteran's history of hospitalization for viral hepatitis in 1978, and the Veteran's subsequent history of treatment for lupus, followed by his 1998 serology report reflecting he was positive for the hepatitis C antibody, and his subsequent hospitalization in May to June 2004 for diagnosed hepatitis C. The Veteran reported experiencing chronic abdominal pain in the epigastric area since he was treated for viral hepatitis in the 1970s (in 1978). The examiner also noted that the Veteran had an EGD in 2009 that showed gastritis, and the Veteran reported occasional nausea. He also reported fatigue. Various blood panel/serology tests results dated April 2010 are noted in the examination report. The examiner noted that the Veteran currently has discoid lupus erythematous, and that he had not been treated with interferon therapy for his hepatitis C as a result of these concomitant conditions. The Veteran reported IV drug use (cocaine) once in service in 1975, denied any other history of drug use, and reported sharing razors and having unprotected sex in service. In addition, for the first time, the Veteran reported that he received air gun injections in service. The examiner stated that he could not opine as to whether the Veteran's hepatitis C was related to service without resorting to mere speculation. The examiner reasoned that while the Veteran's hepatitis C could be related to the risk factors he reported in service, the Veteran also had a history of lupus. The examiner also noted that it was not possible to ascertain whether the Veteran's hepatitis was type C back in 1978 (three years post-service). See VA Treatment Record, April 2006 (hepatology; notes with regard to the 1978 treatment records that it is not clear whether the Veteran had type A or C hepatitis because testing for type A was not advanced at that time and testing for type C was not yet available).

The Board finds the above May 2010 opinion of the VA examiner to be the most probative evidence of record as to whether the Veteran's hepatitis C is related to service. The VA examiner reviewed the claims file, took into account all of the Veteran's reported hepatitis C risk factors in service and his post-service medical history. The Board notes that there is no medical opinion of record that contradicts the opinion of the VA examiner. 

The Board also acknowledges several statements by the Veteran, including his asserted risk factors in service of IV drug use, sharing razors, unprotected sex, and air gun injections, and the Board acknowledges that the Veteran, as a lay person, is competent to report such events. See Charles v. Principi, 16 Vet. App. 370, 374 (2002). At the same time, however, the Board finds the Veteran's lay reports of in-service risk factors to be not credible. In that regard, an April 2006 VA hepatology treatment record reflects that the Veteran reported an in-service history of IV drug use and sharing razors, but no mention was made of unprotected sex or air gun injections. Other VA treatment records reflect that the only in-service risk factor reported by the Veteran to VA clinicians was use of IV drugs in service (as noted above, service connection may not be granted for a disease resulting from willful misconduct in service, including illicit drug use). See, e.g., VA Treatment Record, September 2005. Moreover, the Board notes that prior VA treatment records reflect that in May and June 2004, when the Veteran was hospitalized for hepatitis C and reportedly first learned he had the disease, he never reported any history of risk factors in service to the VA clinicians or that he believed it was related to service in any way. Because the Veteran's reported history of risk factors to clinicians is shown to be inconsistent, as outlined above, the Board finds that the Veteran's lay history of his in-service risk factors lacks credibility and probative value. The Board adds that the mere transcription of the Veteran's lay history of risk factors to clinicians does not transform it into medical evidence. See LeShore v. Brown, 8 Vet. App. 406 (1995). Moreover, the Board notes that the Veteran, as a lay person, is not competent to offer an opinion on a matter clearly requiring medical expertise, such as linking his hepatitis C to service. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (explaining in footnote 4 that a Veteran is competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions). Therefore, this is not a case in which the Veteran's lay beliefs alone can serve to establish any association between his hepatitis C disease and his active service. See Espiritu v. Derwinski, 2 Vet. App. 492 (1992); Moray v. Brown, 5 Vet. App. 211 (1993).

As a final matter, the Board acknowledges an article submitted by the Veteran from the Mayo Clinic website regarding hepatitis C, which article notes that it can be caused by blood transfusions, IV drug use (sharing needles), and sexual contact. The Board notes in particular that this article provides "hepatitis C is passed . . . most commonly through needles shared during illegal drug use," and, as noted above, the Veteran admits to illegal IV drug use in service, which constitutes willful misconduct for which service connection may not be granted. As for the other "causes" noted in the article, the Board noted again that it finds the Veteran's reports as to his other in-service risk factors to lack credibility. In any event, the Board finds the opinion of the May 2010 VA examiner to be by far more probative than this article, as the examiner took into account the Veteran's particular medical history and examined him.

In summary, the Board finds that the preponderance of the evidence is against granting service connection for hepatitis C, and the benefit-of-the-doubt rule is not for application; there is not an approximate balance of evidence. See 38 U.S.C.A. § 5107(b) (West 2002); See Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001).


ORDER

Service connection for hepatitis C is denied.



_________________________________________________
L.M. BARNARD
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs