Citation Nr: 1302159 
Decision Date: 01/18/13 Archive Date: 01/23/13

DOCKET NO. 09-29 562 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Whether new and material evidence has been received to reopen a claim of entitlement to service connection for a low back disability. 


REPRESENTATION

Appellant represented by: Kenneth M. Carpenter, Attorney


ATTORNEY FOR THE BOARD

T. Wishard, Counsel


INTRODUCTION

The Veteran had active military service from July 1966 to June 1967.

This matter comes before the Board of Veterans' Appeals (Board) from a March 2008 rating decision of the Department of Veterans Affairs (VA), Regional Office (RO) in Waco, Texas. 

This matter was previously before the Board in December 2010 when the Board remanded it for further development. It was again before the Board in November 2011, when the Board denied the Veteran's claim. The Veteran appealed the November 2011 Board decision to the United States Court of Appeals for Veterans Claims (Court). In an Order dated in July 2012, the Court vacated the Board's November 2011 decision and remanded the case to the Board for development consistent with a Joint Motion for Remand (JMR).


FINDINGS OF FACT

1. In a March 1968 rating decision, the RO denied the Veteran's claim for entitlement to service connection for a low back disability; the Veteran did not appeal and the decision became final. 

2. In a February 1978 decision, the Board denied the Veteran's claim for entitlement to service connection for a back disability. 

3. In an unappealed May 1996 decision, the RO found that new and material evidence had not been received to reopen a previously denied claim for a back disability 

4. Evidence received since May 1996 RO decision is new; however, it is not material because it does not raise a reasonable possibility of substantiating the claim of entitlement to service connection for a low back disability. 

5. Service department records have been associated with the claims file since the May 1996 RO decision; however, they are not relevant to the claim. 


CONCLUSION OF LAW

Evidence received since the May 1996 RO decision which found that new and material evidence had not been received to reopen a previously denied claim for entitlement to service connection for a low back disability, which was the last final denial with respect to this issue, is not new and material; the claim is not reopened. 38 U.S.C.A. §§ 5108, 7105 (West 2002); 38 C.F.R. § 3.156, 20.302, 20.1103 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

In Kent v. Nicholson, 20 Vet. App. 1 (2006), the Court issued a decision that established new requirements with respect to the content of the VCAA notice for reopening claims. In the context of a claim to reopen, the Secretary must look at the bases for the denial in the prior decision and to respond by providing the appellant with a notice letter that describes what evidence would be necessary to substantiate that element or elements required to establish service connection that were found insufficient in the previous denial.

In VA correspondence to the appellant in December 2010, the Veteran was informed of the reasons for the prior denial of his claim, of what evidence was required to reopen his previously denied claim, and of the law pertaining to the assignment of a disability rating and effective. Because the notice was not completed prior to the initial AOJ adjudication denying the claim, the timing of the notice does not comply with the express requirements of the law as found by the Court in Pelegrini. Here, the Board finds that any defect with respect to the timing of the VCAA notice was harmless error. Although complete notice was provided to the appellant after the initial adjudication, the claim was readjudicated thereafter, and the appellant therefore, has not been prejudiced. The content of the notice fully complied with the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b), Dingess/Hartman, and Kent. The Veteran has been provided with every opportunity to submit evidence and argument in support of his claim, and to respond to VA notices 

VA also has a duty to assist the Veteran in the development of the claim. The claims file contains VA and private medical records, service treatment records (STRs), a service personnel record, lay statements, and the statements of the Veteran in support of his claim. The file also contains VA formal findings of unavailability of records of treatment alleged by the Veteran. The Board has considered the statements and perused the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim for which VA has a duty to obtain. 

VA is not required to provide a medical examination to a claimant seeking to reopen a previously and finally disallowed claim prior to a determination that new and material evidence has been received. See Paralyzed Veteran's of Am. v. Sec'y of Veterans Affairs, 345 F.3d 1334 (Fed. Circ. 2003). Nevertheless, the Board notes that VA did provide the Veteran with an examination and opinion in September 2008. Because, in the decision below, the Board does not reopen the Veteran's claim, any issue with regard to the adequacy of the VA examination is moot. Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). 

Based on the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed in this appeal and no further development is required to comply with the duty to assist the Veteran in developing the facts pertinent to the claim. Essentially, all available evidence that could substantiate the claim has been obtained.


Legal criteria 
New and material evidence

In general, RO decisions that are not timely appealed are final. See 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. § 20.200 (2012). 

An exception to this rule is 38 U.S.C.A. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim.

The Board must consider the question of whether new and material evidence has been received because it goes to the Board's jurisdiction to reach the underlying claim and adjudicate the claim de novo. See Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001); Barnett v. Brown, 83 F.3d 1380 (Fed. Cir. 1996). If the Board finds that no such evidence has been offered, that is where the analysis must end, and what the RO may have determined in that regard is irrelevant. Barnett, supra. Further analysis, beyond consideration of whether the evidence received is new and material is neither required nor permitted. Id. at 1384. See also Butler v. Brown, 9 Vet. App. 167, 171 (1996).

"New" evidence is existing evidence not previously submitted to agency decision makers. "Material" evidence is existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). In determining whether evidence is new and material, the "credibility of the evidence is to be presumed." Justus v. Principi, 3 Vet. App. 510, 513 (1992). However, lay assertions of medical causation cannot serve as the predicate to reopen a claim under § 5108. See Moray v. Brown, 5 Vet. App. 211, 214 (1993).

In order for evidence to be sufficient to reopen a previously disallowed claim, it must be both new and material. If the evidence is new, but not material, the inquiry ends and the claim cannot be reopened. See Smith v. West, 12 Vet. App. 312, 314 (1999). If it is determined that new and material evidence has been submitted, the claim must be reopened. The VA may then proceed to evaluate the merits of the claim on the basis of all evidence of record, but only after ensuring that the duty to assist the appellant in developing the facts necessary for the claim has been satisfied. See Elkins v. West, 12 Vet. App. 209 (1999), but see 38 U.S.C.A. § 5103A (West 2002) (eliminating the concept of a well-grounded claim).

The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." Moreover, in determining whether this low threshold is met, consideration need not be limited to consideration of whether the newly submitted evidence relates specifically to the reason why the claim was last denied, but instead should ask whether the evidence could reasonably substantiate the claim were the claim to be reopened, either by triggering the VA's duty to assist or through consideration of an alternative theory of entitlement. See Shade v. Shinseki, 24 Vet. App. 110 (2010). 

Service Connection

Establishing service connection generally requires medical evidence or, in certain circumstances, lay evidence of the following: (1) A current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) nexus between the claimed in-service disease and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir.2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed.Cir.2007); Hickson v. West, 12 Vet.App. 247 (1999); Caluza v. Brown, 7 Vet.App. 498 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table). Pursuant to 38 C.F.R. § 3.303(b), a claimant may establish the second and third elements by demonstrating continuity of symptomatology. See Barr v. Nicholson, 21 Vet.App. 303 (2007). Continuity of symptomatology can be demonstrated by showing (1) that a condition was "noted" during service; (2) evidence of continuous symptoms after service; and (3) medical, or in certain circumstances, lay evidence of a nexus between the current disability and the post service symptoms. Savage v. Gober, 10 Vet.App. 488 (1997). 

In each case where service connection for any disability is being sought, due consideration shall be given to the places, types, and circumstances of such Veteran's service as shown by such Veteran's service record, the official history of each organization in which such Veteran served, such Veteran's medical records, and all pertinent medical and lay evidence. 38 U.S.C.A. § 1154(a) (West 2002).

Analysis

The Board has reviewed all of the evidence in the claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claim.

Historically, the appellant's claim for entitlement to service connection for a low back disability was denied by the RO in March 1968. The Veteran filed a claim to reopen, and in February 1978, the Board denied his claim for entitlement to service connection. The Veteran again filed a claim to reopen his previously denied claim, which was denied by the RO in May 1996 because the RO did not receive new and material evidence. The appellant did not appeal the decision and it became final. In 2007, the appellant requested that his claim for entitlement to service connection be reopened. 

Evidence of record at time of last final denial

At the time of the May 1996 denial, the evidence of record consisted of the Veteran's DD 214, his STRs, lay statements, medical records, and the testimony of the Veteran in support of his claim.
The Veteran's DD 214 reflects that he was discharged from service on June 26, 1967, and had only two days of foreign and/or sea service. It further reflects that the reason for separation was 264-paragraph 13265.1C. Marine Corps Personnel Manual and BuMed Instn 1910.2D, and California Naval Hospital Oakland Medical Board Report of June 7, 1967. The number "264" refers to separation for unsuitability due to character and behavioral disorders. Paragraph "13265.1C" refers to character and behavior disorders, disorders of intelligence, and personality disorders due to acute or special stress as listed in the Department of Defense Disease and Injury Codes. The DD 214 lists the Veteran's reenlistment code as RE-3P. RE-3P reflects that a Veteran would be eligible for reenlistment upon removal of a disqualifying "physical" factor. 
The Veteran's STRs reflect that the Veteran was seen by the base psychiatrist in December 1966 with complaints of unexplained abdominal pain and childish and unhappy behavior. The consultation note reflects that the Veteran had had two suicide gestures in the past two months, and had anxiety and nervousness. The examiner found that the Veteran represented a schizoid personality which was severe. It was recommended that he be administratively discharged as unsuitable in accordance with Marine Corps Personnel Manual, article 13265. 

A January 1967 STR, while the Veteran was at Camp Pendleton, reflects that the Veteran had attempted suicide four times, two by hanging, once by strangulation and once by poison. It was also noted that the veteran had "homosexuality on two occasions" and "some low back pain on moving wall locker." It was noted that he had been seen by the base psychiatrist and an administrative discharge had been recommended. It was noted that the Veteran was "physically in good health." The record further rotes "[regarding] low back pain - no difficulty [with] feet or lower extremities, urination, etc. Slight para-vertebral muscle spasm."

STRs dated in February reflect that the Veteran was possibly epileptic and reported unusual history of headaches, rage, and difficulty breathing. 

A June 1967 Medical Board Report reflects that the Veteran had a diagnosis of schizoid personality. It was noted that he had been admitted to the Naval Hospital in Oakland California on February 10, 1967 with a diagnosis of pharyngitis but with additional complaints of anxiety and depression. The "[a]dmission physical revealed an essentially negative examination with the exception of marked tonsillar hypertrophy with surrounding erythema and some evidence of enlarged cervical lymph nodes. It was noted that after his initial management on a medical ward, he was transferred to the open psychiatric ward, but after a brief stay there was unable to tolerate this, related to threats of suicide and possible going [on unauthorized absence.] He was subsequently transferred to the closed ward." It was found that he was "unsuitable for service." It was further noted that the Veteran would "be discharged from the U.S. Naval Services in accordance with Para. C-13265.IC MARCORPERS Manual and BuMed Instr. 1910.2D." The first endorsement is dated June 7, 1967. The Veteran was discharged on June 26, 1967. 

A November 1967 hospital summary, VA Form 10-1000, reflects that the Veteran was hospitalized from November 25, 1967 to January 5, 1968. The diagnosis was chronic depressive reaction. 

A February 1968 clinical record reflects that the Veteran was admitted to the hospital on January 5, 1968 as a transfer from the Big Spring Texas VA hospital. It was noted that the physical examination was "essentially unremarkable." The diagnosis was severe schizoid personality. 

A 1968 record also reflects that the Veteran had been admitted for the first time from Texas because of nervousness, depression, and crying spells. The Veteran was noted to be missing from his ward on February 10, 1968. He was discharged against medical advice. It was again noted that his physical examination was essentially unremarkable.

Post service 1974 and 1975 records reflect that the Veteran was treated for his upper lip, a hand pain, and eye complaints. A record from July 23, 1975 reflects low back complaints. Additional records reflect that the Veteran reported that on July 21 or 22, 1975, he was at work when he was lifting something, and turned to answer a question, when he noted immediate low back pain. An August 1975 record reflects that he denied any previous injury. He was diagnosed with spondylolysis L-4-5 bilateral with superimposed chronic lumbosacral strain and cervical strain. 

A November 1976 certificate of attending physician reflects that the Veteran was seen on August 1975 for acute lumbar muscle and ligament strain. X-rays of the lumbar spine were noted to be negative for fracture or dislocation. 

A December 1976 statement from Dr. T. B. reflects that the Veteran reported a history of injury to his back in "1956" while on duty with the Marines in Okinawa. He reported that he was aboard a ship when he fell down two ladder wells. He reported that he was hospitalized for approximately nine months. The diagnosis was "residuals, injury to low back, history of." 

A May 1977 statement from Dr. G.B. sates that the Veteran reported that 11 years earlier he fell down two flights of stairs while in service Dr. G.B. stated that "this history is compatible with findings of a lumbosacral spondylolysis at L-4, 5 which was noted since his initial visit on 10-1-75." 

A transcript of an April 1978 RO hearing is of record. It reflects that the Veteran reported that he injured his back on a ship in Okinawa and stayed aboard the ship until he could be transferred to Oceanside, California. He reported that he was treated for a mental problem instead of his back. He reported that four years earlier, while working for Frito-Lay, he made a sudden turn and had to be hospitalized. He also stated that a spinal tap revealed that his injury was at least 11 years old. The Veteran testified that while moving wall lockers in service, he had trouble with his back. 

Statements from the Veteran's sibling, C.M, and his father, T.M., Sr. state that the Veteran was injured in service and was seen for his back by Dr. P, who sent him to the VA hospital in Big Springs Texas.

A statement from M.J.M. states that the Veteran was having trouble with his back when he got out of service, was seen by Dr. P, and was sent to the VA hospital in Big Springs, Texas in 1966 and 1967.

A 1982 VA examination report reflects that the Veteran reported a medical discharge in June 1967. He further reported that after separation, he worked for a lumber company for 6 months, and has not worked since that time. He reported that he was unable to work because of a back ache due to service. The Veteran reported two injuries in service: that while moving wall lockers, he slipped and fell over a large locker, and that he fell down two ladder wells, resulting in immediate pain and requiring him to be strapped to a gurney and sent to the United States, where he was hospitalized "off and on" for a year. A December 1982 radiology report reflects spondylolysis with disc narrowing at L4 level. 

In a written statement dated in April 1996, J.D. stated that she knew the Veteran in 1966 when he entered the service. She further stated that she was told about the accident aboard ship, and that after the Veteran's discharge from service, he has not been able to work."

In a written statement dated in April 1996, G.G. stated that he has been friends with the Veteran since grade school. G.G. further stated that the Veteran was the "picture of health" when he enlisted. He stated that after "the accident he has not been able to work or walk two blocks without hurting and extreme pain."

In a written statement, L.J. stated that he knew the Veteran in 1966 in the service. He also stated that the he was told of the Veteran's injuries aboard ship. He stated that the Veteran had a job before service but after leaving the service "he has not been able to work at all."

Evidence of record since the last final denial

The evidence added since the last final denial consists of lay statements, the Veteran's statements in support of his claim, medical records, and a copy of service "Administrative Remarks".

Clinical records reflect continued treatment for complaints of chronic low back pain and a "longstanding" condition of spondylolisthesis. They also note that the Veteran had a history of back pain due to injury in service. A 2007 VA MRI report reflects an impression of "anterolisthesis of L4 second-degree with stretching of the L4 nerves bilaterally as a result and compression of the root sleeves bilaterally Disc at L2-L3 is also narrow and there appears to be some narrowing of the root sleeves on the caudal aspect bilaterally." 

The Veteran has stated that he injured his back aboard a ship, was airlifted to a second ship, was brought to Oakland, California, and was admitted to U.S. Naval hospital. The Board notes that the records also reflect that the Veteran reported a claymore mine explosion in 1964 and an explosion while he was in Vietnam, during which he hit his head, and fell down a flight of steps while on the way to the infirmary. The Board notes that the Veteran did not have service in 1964 or in Vietnam. The Board find that such statements as to service in Vietnam or in 1964 are patently incredible based on the evidence as a whole, to include the Veteran's DD 214. The statements with regard to a fall down steps while aboard a ship are consistent and cumulative of his prior statements. 

A 2008 VA examination report reflects that the Veteran reported that he was aboard a ship when he felt an explosion and suffered dizziness. As he was walking down the stairs, he got dizzy and fell about 10-12 feet down the stairs. The examiner opined that he could not find sufficient evidence in the Veteran's service record as to the extent of trauma as stated by the Veteran

The record contains copies of the prior statements of G.G., M.H.M., L.D., and J.D.

The "Administrative Remarks" (NAVMC 118) reflect that in January 1967, the Veteran was recommended for discharge due to reason of unsuitability in accordance with Paragraph 13265.2B Marine Corps Bulletin 1910 of 22 September 1966. A February 10, 1967 remarks reflect he was deleted from the replacement draft for medical [evacualion]. The June 26, 1967 separation section remarks reflect that the Veteran was not physically qualified for reenlistment. 


Old and new evidence of record considered as a whole

The Board finds that none of the additional evidence raises a possibility of substantiating the claim for entitlement to service connection for a low back disability. The lay statements are not and material as they are duplicative of statements in the record at the time of the last final denial. The treatment records are new as they were not previously of record, but they are not material as they do not substantiate the allegation of an in-service injury, and merely reflect the unsupported history by the Veteran. The Veteran's statements are essentially the same as his allegations made prior to the last final denial. 

The Veteran's attorney asserts that the "Administrative Remarks" constitute a relevant service department records under 38 C.F.R. § 3.156(c) because the remarks indicate that the Veteran was not "physically qualified for re-enlistment." The Board finds that the assertion is without merit, and that the Administrative Remarks are not relevant records as contemplated by 38 C.F.R. § 3.156(c) or new and material evidence as contemplated by 38 C.F.R. § 3.156(a). 

Importantly, the evidence of record at the time of the last final denial already reflected that the Veteran was physically not qualified for reenlistment. As noted above, the Veteran's DD 214 reflected a reenlistment code of 3P. RE-3P reflects a physical disqualification. The "3" reflects that a Veteran would be eligible for reenlistment upon removal of a disqualifying factor. The "P" reflects that the factor is "physical". (The regulation did not differentiate between physical and psychiatric disqualifying factors under "3"; but listed "physical". The only other possible factors under the regulation were "H" for dependency hardship, "U" for underage, "R" for rank reappointment restriction, and "S" for sole surviving son.") 

Thus, at the time of the last final denial, the Board already had a service department record (the DD 214) which reflected that the Veteran was not physically qualified for re-enlistment. The Administrative Remarks document merely reflects the same statement with the same date. 

The administrative remark which reflects that the Veteran was not qualified is dated June 26, 1967. This remark, when considered with the other service records, reflects that the Veteran was discharged due to unsuitability. As noted above, the "second endorsement" to the Medical Board is also dated June 26, 1967. The Medical Board report reflects that the Veteran will be discharged from the Navy due to being "unsuitable for service" due to "schizoid personality." The Medical Board report reflects that the Veteran's admission physical was essentially negative with the exception of pharyngitis. It was noted that the Veteran "suffers from a personality disorder which renders him unsuitable for future Naval Service." Also, as noted above, the Veteran's DD 214 reflects that he was discharged on June 26, 1967. Thus, although the administrative remark of June 26, 1967 states that the Veteran was not "physically qualified," the remark cannot be read in a vacuum in determining whether it is relevant. To determine whether the administrative remark is relevant and/or material, it must be considered with the other remarks on the same page, to include PAR13265 2B McBUL 1910 of September 22, 1966, possible re-enlistment codes, and with the Veteran's DD 214. 

The Board also notes that the Secretary's 2005 proposed rule change statement clarified that the exception in § 3.156(c) allows for the reconsideration of decisions on the basis of newly discovered service department records. The Secretary explained that the purpose of this section is to ensure that the claimant is not harmed by "administrative deficiency of the government." See New and Material Evidence, 70 Fed.Reg. at 35,388. In the present claim, there is no administrative deficiency of the government, with regard to his service department records, which can have harmed the Veteran. The administrative remark (NAVMC) with regard to reenlistment qualification merely reflects the DD 214 reenlistment code. 

The February 10, 1967 remark is also not relevant to the present issue. The remark reflects that the Veteran was seen for medical [evacualion]. An STR reflects that the Veteran was admitted for pharyngitis on February 10, 1967. The Medical Board report also reflects that the Veteran was admitted to the Naval Hospital at Oakland California on February 10, 1967 with the diagnosis of pharyngitis and additional complaints of anxiety and depression. During his treatment, he was diagnosed with schizoid personality. Thus, the February 10, 1967 remark is not relevant to the present case. 

The Board is mindful of the Court's decision in Shade v. Shinseki, 24 Vet. App. 110 (2010); however, even given the low threshold to reopen a claim, the Board finds that this threshold has not been met. The newly received documents are not material as they do not raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a) and (c). Accordingly, the Board concludes that evidence has not been received which is new and material, and the claim for service connection for a low back disability is not reopened. The Board has considered the doctrine of giving the benefit of the doubt to the appellant, under 38 U.S.C.A. § 5107 (West 2002), and 38 C.F.R. § 3.102 (2012), but does not find that the evidence is of such approximate balance as to warrant its application. Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).

ORDER

As new and material evidence has not been received to reopen the claim of entitlement to service connection for a low back disability, the appeal is denied.




____________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs