Citation Nr: 1228226 
Decision Date: 08/16/12 Archive Date: 08/21/12

DOCKET NO. 08-19 210 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Winston-Salem, North Carolina


THE ISSUES

1. Whether new and material evidence to reopen a claim for service connection for bronchial asthma has been received.

2. Whether new and material evidence to reopen a claim for service connection for a right upper extremity nerve condition has been received.

3. Entitlement to an acquired psychiatric disability to include anxiety and major depressive disorder.


REPRESENTATION

Appellant represented by: The American Legion




ATTORNEY FOR THE BOARD

G. Slovick, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April to July 1966. 

This appeal to the Board of Veterans' Appeals (Board) arose from a June 2007 rating decision in which the RO denied the Veteran's petitions to reopen claims for service connection for bronchial asthma and a right upper extremity nerve condition and service connection for depressive disorder claimed as nervous condition, stress, sadness and lack of sleep. In July 2007, the Veteran filed a notice of disagreement (NOD). A statement of the case (SOC) was issued in May 2008, and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) in June 2008.

As noted above, in the June 2007 rating decision, the RO denied service connection for depressive disorder claimed as nervous condition, stress, sadness and lack of sleep. Nevertheless, given the evidence of record (including diagnoses of depression and anxiety) the Board has expanded the claim to one for service connection for any psychiatric disability, to characterized appeal as set forth on the title page. See Clemons v. Shinseki, 23 Vet. App. 1 (2009) (holding that the scope of a mental health disability claim includes any mental disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record).

The Board notes that, pursuant to his request for a Board hearing, the Veteran was scheduled for a video-conference hearing on March 18, 2010 at the RO. Although the hearing notification letter was not returned by the United States Postal service as undeliverable, the Veteran failed to appear for the scheduled hearing, and has not requested rescheduling of the hear. Accordingly, his Board hearing request is deemed withdrawn, See 38 C.F.R. § 20.702 (d) (2011).

The Board's decision addressing the requests to reopen the claims for service connection for bronchial asthma and for a right upper extremity nerve condition is set forth below. The claim for service connection for an acquired psychiatric disability, to include anxiety and major depressive disorder, is addressed in the remand following the order; this matter is being remanded to the RO, via the Appeals Management Center (AMC) in Washington, DC. VA will notify the Veteran when further action, on his part, is required.


FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate each claim herein decided have been accomplished.

2. In a June 2003 rating decision, the RO declined to reopen a claim for service connection for bronchial asthma; although notified of the denial in a letter that same month, the Veteran did not initiate an appeal. 

3. In a June 2003 rating decision, the RO denied service connection for a right upper extremity nerve condition; although notified of the denial in a letter that same month, the Veteran did not initiate an appeal. 

4. No new evidence associated with the claims file since the June 2003 rating decision, when considered by itself or in connection with evidence previously assembled, relates to an unestablished fact necessary to substantiate the claim for service connection for bronchial asthma or raises a reasonable possibility of substantiating that claim.

5. No new evidence associated with the claims file since the June 2003 rating decision, when considered by itself or in connection with evidence previously assembled, relates to an unestablished fact necessary to substantiate the claim for service connection for a right upper extremity nerve condition or raises a reasonable possibility of substantiating that claim.


CONCLUSIONS OF LAW

1. The June 2003 rating decision in which the RO declined to reopen a claim for service connection for bronchial asthma is final. 38 U.S.C.A. § 7105(b) (West 2002); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2011).

2. As evidence received since the RO's June 2003 denial is not new and material, the criteria for reopening the claim for service connection for bronchial asthma are not met. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (2011). 

3. The June 2003 rating decision in which the RO denied service connection for a right upper extremity nerve condition is final. 38 U.S.C.A. § 7105(b) (West 2002); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2011).

4. As evidence received since the RO's June 2003 denial is not new and material, the criteria for reopening the claim for service connection for a right upper extremity nerve condition are not met. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002 & Supp. 2011)) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2011).

Notice requirements under the VCAA essentially require VA to notify a claimant of any evidence that is necessary to substantiate the claims, as well as the evidence that VA will attempt to obtain and which evidence he or she is responsible for providing. See, e.g., Quartuccio v. Principi, 16 Vet. App. 183 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b)). As delineated in Pelegrini v. Principi, 18 Vet. App. 112 (2004), after a substantially complete application for benefits is received, proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claims; (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must ask the claimant to provide any evidence in her or his possession that pertains to the claims, in accordance with 38 C.F.R. § 3.159(b)(1).

The Board notes that, effective May 30, 2008, 38 C.F.R. § 3.159 has been revised, in part. See 73 Fed. Reg. 23,353-23,356 (April 30, 2008). Notably, the final rule removes the third sentence of 38 C.F.R. § 3.159(b)(1), which had stated that VA will request that a claimant provide any pertinent evidence in his or her possession.

VA's notice requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). With respect to requests to reopen previously denied claims, a claimant must be notified of both what is needed to reopen the claim and what is needed to establish the underlying claim for service connection. See Kent v. Nicholson, 20 Vet. App. 1 (2006).

VCAA-compliant notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (in this case, the RO). Id.; Pelegrini, 18 Vet. App. at 112. See also Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). However, the VCAA notice requirements may, nonetheless, be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Id.

In this appeal, February and March 2007 pre-rating letters notified the Veteran that the claim for service connection for bronchial asthma had been previously denied because the evidence failed to demonstrate that asthma, which pre-existed service, was aggravated during the Veteran's short period of service and that the RO needed new and material evidence to reopen this claim. In the Veteran's March 2007 letter, the Veteran was notified that his claim for service connection for a right upper extremity nerve condition was previously denied because the evidence failed to demonstrate that a right shoulder condition was incurred in or aggravated by military service.

These letters specifically advised the Veteran that, in order to be considered material, the evidence must pertain to the reason his claim was previously denied. They also informed the Veteran that, in order to be considered new and material, the evidence would have to raise a reasonable possibility of substantiating the claim, and could not simply be repetitive or cumulative of the evidence of record at the time of the previous denial.

The February and March 2007 letters also provided notice to the appellant regarding what information and evidence was needed to satisfy the elements of the underlying claim for service connection, as well as what information and evidence must be submitted by the appellant, and what information and evidence would be obtained by VA. The letters also specifically informed the Veteran to submit any evidence in his possession pertinent to the claims (consistent with Pelegrini and the version of 38 C.F.R. § 3.159 then in effect). Additionally, these letters additionally provided the Veteran with general information pertaining to VA's assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations, consistent with Dingess/Hartman. 

The June 2007 rating decision reflects the RO's initial adjudication of the claims after issuance of the February and March 2007 letters. Hence these letters meet the content of notice requirements of Pelgrini, Kent, and Dingess/Hartman, as well as the VCAA's time of notice requirement. 

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the matter on appeal. Pertinent medical evidence associated with the claims file consists of service medical records, VA treatment records, and private treatment reports. Also of record and considered in connection with the appeal are various written statements provided by the Veteran, his private physicians, and by his representative, on his behalf. 

No further RO action on this matter, prior to appellate consideration, is warranted. The Board acknowledges that the Veteran was not provided with a VA examination in connection with either request to reopen. Under 38 C.F.R. § 3.159(c)(4)(iii) (2011), however, providing a VA examination in a new and material evidence claim can only be considered if new and material evidence is actually presented or secured. Because the Board herein finds that new and material evidence to reopen the claim has not been received, a VA examination, at this juncture, is not warranted.

In summary, the duties imposed by the VCAA have been considered and satisfied. Through various notices of the RO, the Veteran has been notified and made aware of the evidence needed to substantiate the claims, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with either request to reopen. Consequently, any error in the sequence of events or content of the notice is not shown to prejudice the Veteran or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matters herein decided, at this juncture. See Mayfield v. Nicholson, 20 Vet. App. 539, 543 (2006) (rejecting the argument that the Board lacks authority to consider harmless error). See also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).



II. Requests to Reopen

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110 ; 38 C.F.R. § 3.303 . Service connection may be granted for any disease diagnosed after discharge from service when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) .

The Veteran was first denied service connection for bronchial asthma in an October 1966 rating decision. The evidence then of record consisted of the Veteran's service treatment records. The bases for the RO's denial were that the Veteran's asthma pre-existed his service and that the evidence failed to demonstrate an aggravation of his condition during his short period of service. The Veteran did not appeal the denial. 

In a June 2003 rating decision, the RO denied the Veteran's claim for service connection for a right upper extremity nerve condition, as well as declined to reopen a claim for service connection for bronchial asthma. The evidence of record in June 2003 consisted of the Veteran's service treatment records, private treatment records and VA treatment records. The bases for the RO's denial of the right upper extremity claim were that the Veteran's service treatment records did not demonstrate any treatment for right upper extremity conditions, and that post-service treatment records demonstrated later injuries to the right arm which were unrelated to service. With respect to the request to reopen the previously denied claim for service connection for bronchial asthma, the RO found that the evidence submitted following his previous unappealed rating decisions in support of his claim did not demonstrate a permanent aggravation of asthma. 

Although notified of the denial of each claim in a June 2003 letter, the Veteran did not appeal the June 2003 RO decision. See 38 C.F.R. § 20.200, 20.202 (2011). The RO's June 2003 denial of each claim is therefore final as to the evidence then of record, and is not subject to revision on the same factual basis. See 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.104 , 20.302, 20.1103.

However, under pertinent legal authority, VA may reopen and review a claim that has been previously denied if new and material evidence is submitted by or on behalf of the Veteran. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a); see also Hodge v. West, 155 F.3d 1356 (Fed. Cir. 1998).

The Veteran requested that VA reopen the previously-denied claims for service connection in January and March 2007 statements. Regarding petitions to reopen filed on and after August 29, 2001, 38 C.F.R. § 3.156(a) defines "new" evidence as evidence not previously submitted to agency decision makers and "material" evidence as evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 3 8 C.F.R. § 3.156(a).

In determining whether new and material evidence has been received, VA must initially decide whether evidence received since the prior final denial is, in fact, new. As indicated by the regulation cited above, and by judicial case law , "new" evidence is that which was not of record at the time of the last final disallowance (on any basis) of the claim, and is not duplicative or "merely cumulative" of other evidence then of record. This analysis is undertaken by comparing the newly received evidence with the evidence previously of record. After evidence is determined to be new, the next question is whether it is material.

The provisions of 38 U.S.C.A. § 5108 require a review of all evidence submitted by or on behalf of a claimant since the last final denial on any basis to determine whether a claim must be reopened. See Evans v. Brown, 9 Vet. App. 273, 282-83 (1996). Here, the last final denial of each claim is the RO's June 2003 rating decision. Furthermore, for purposes of the "new and material" analysis, the credibility of the evidence is presumed. Justus v. Principi, 3 Vet. App. 510, 512-13 (1992).

The evidence added to the claims file since the June 2003 rating decision consists of letters from the Veteran's United States Senators, statements from the Veteran's private physicians, and statements from the Veteran and his representative, on his behalf. 

Considering the additional evidence received, the Board finds, that, while some of the evidence added to the record since the June 2003 rating decision is new in the sense that it was not previously before agency adjudicators, none of the evidence is material for purposes of reopening, as the evidence fails to relate to an unestablished fact necessary to substantiate either the claim for service connection for bronchial asthma or the claim for a right upper extremity nerve condition, and does not provide a reasonable basis for allowance of either claim. 

The Board notes, initially that the claims file includes multiple letters from the Veteran's United States Senators. None of the letters was previously of record, and each is therefore new. However, as these letters pertains only to the progress of the Veteran's appeal, as opposed to the substance of his claims, they are not relevant to either matter under consideration, and hence, are not material.

Turning to the additional medical evidence received, the Board notes that additional evidence associated with the claims file includes the statements of Dr. J.C., Dr. K.L., and nurse practitioner B.H., each of whom addressed the Veteran's depression and its relation with his father's death. Also added to the claims file are treatment records from the Salisbury VA Medical Center (VAMC) dated between January 2007 and March 2007 which include no comment or opinion as to the etiology of an asthma or right arm condition. Again, all of this evidence is new; however, none of it is material for purposes of reopening either claim. , None of the medical statements or treatment records speak to the underlying reason each of the Veteran's claims was denied. This evidence is silent as to service and the claimed aggravation of bronchial asthma and silent as to any relationship between service and a right upper extremity nerve condition. As such, this evidence simply does not present a reasonable possibility of substantiating either claim.

As for the lay evidence of record, it is notable that, in the July 2007 NOD, the Veteran explained that "service connection for right upper extremity nerve condition doesn't have a thing to do with service," he further stated he got hurt while working in a VA facility. The Veteran additionally asserted that his asthma was aggravated by his service. In his June 2008 substantive appeal, the Veteran explained that his arm injury occurred in while he was working at the Salisbury VAMC, and that he tried to get disability from the VA and was turned down. He stated that his asthma was made worse by the training he received during his Army service.. 

In a March 2012 written brief presentation, the Veteran's representative stated that the Veteran had submitted new and material evidence to reopen both his claim for service connection for bronchial asthma and for a right upper extremity nerve condition, but did not explicitly identify any such evidence.

As regards the claim involving upper extremity disability, the Board notes that neither the Veteran's nor his representative's statements even attempt to link the disability to the Veteran's service; in fact, the Veteran's statement, noting that an arm condition has nothing to do with service, does the opposite. Clearly, then, such statements are not relevant to the claim for service connection for right upper extremity disability.

As for the Veteran's assertions that his asthma was aggravated by service, the Board notes that, although relevant to the claim for service connection for bronchial asthma, these statements are repetitive of statements made prior to the June 2003 denial. As such, this evidence is essentially cumulative of evidence previously of record, and is not "new" for purposes of reopening the claim. 

Even if new, however, the Board points out that, lay assertions, alone, can provide no basis for reopening either claim under consideration. As laypersons without appropriate medical training and expertise, neither the Veteran nor his representative is competent to render a probative (i.e., persuasive) opinion on a medical matter upon which each claim turns-such as whether a right upper extremity disability had its onset in or is otherwise medically-related to service, and/or whether bronchial asthma was aggravated (worsened beyond natural progression) during, or as a result of, the Veteran's service. See Bostain v. West, 11 Vet. App. 124, 127 (1998), citing Espiritu v. Derwinski, 2 Vet. App. 492 (1992). See also Routen v. Brown, 10 Vet. App. 183, 186 (1997) (a layman is generally not capable of opining on matters requiring medical knowledge). Therefore, where, as here, resolution of a claim turns on a medical matter that cannot be established by lay evidence, unsupported lay statements, even if new, typically cannot serve as a predicate to reopen a previously disallowed claim. See Hickson v. West, 11 Vet. App. 374 (1998); Moray v. Brown, 5 Vet. App. 211, 214 (1993).

Under these circumstances, the Board concludes that the criteria for reopening the claims for service connection for bronchial asthma or for a right upper extremity nerve disability are not met, and the June 2003 RO denial of each claim remains final. See 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156. As the Veteran has not fulfilled his threshold burden of submitting new and material evidence to reopen the finally disallowed claim, the benefit-of-the-doubt doctrine is not applicable. See Annoni v. Brown, 5 Vet. App. 463, 467 (1993).


ORDER

As new and material evidence has not been received, the request to reopen the claim for service connection for bronchial asthma is denied.

As new and material evidence has not been received, the request to reopen the claim for service connection for a right upper extremity nerve condition is denied.


REMAND

The Board's review of the claims file reveals that further RO action on the claim remaining on appeal is warranted. 

VA will provide a medical examination or obtain a medical opinion if the record, including lay or medical evidence, contains competent evidence of a disability that may be associated with an event, injury, or disease that occurred in service, but the record does not contain sufficient medical evidence to decide the claim. 38 U.S.C.A. § 5103A(d) (West 2002); McLendon v. Nicholson, 20 Vet. App. 79 (2006). The threshold for determining whether the evidence "indicates" that there "may" be a nexus between a current disability and an in-service event, injury, or disease is a low one. Id. at 83. 

The Board observes that the Veteran's service treatment records indicate that he described a history of nervousness in his May 1965 report of medical history for induction into service. A June 1966 service treatment note reflects the Veteran's complaints of nervousness. 

Post-service treatment records reflect diagnoses of adjustment disorder with anxiety and depression. Notably, the majority of these symptoms are described in conjunction with the Veteran's father's illness and eventual death which appears to have affected the Veteran considerably. 

The record includes a November 1999 statement from physician L.G. which reported that the Veteran had been treated for severe depression which appeared to be secondary to his father being in a hospital. A January 2000 note from the Veteran's social worker, K.L., indicates that, following an estrangement from his father, the Veteran had entered a depressive state and as a result he experienced a number of symptoms to include severe anxiety. In a December 2003 statement, private physician J.C. noted that the Veteran had been treated for depression which he related to the care of his father. A January 2004 letter from nurse practitioner B.H. indicates that she saw the Veteran in June 2003 for a psychiatric evaluation and that the Veteran had major depressive disorder which he related to the trauma he endured during his father's illness and death. 

In the March 2012 written brief presentation, the Veteran's representative asserted that the Veteran's depressive disorder developed as a result of the stresses of basic training and was made more active as a result of the illness and death and his father. The Veteran's representative states that, but for the development of the disorder while in basic training, the Veteran would not have been in a position to have been adversely affected by his father's illness and death. 

The above-cited evidence reflects that a noted history and complaints of nervousness in service, post-service diagnoses of psychiatric disability, and evidence suggesting that there may exist a nexus between current psychiatric disability and service. However, the record includes no medical opinion in this regard. Under these circumstances, the Board finds that VA examination and a medical opinion--based on full consideration of the Veteran's documented medical history and assertions, and supported by clearly-stated rationale-would be helpful in resolving the claim for service connection. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159; McClendon, supra. 

Accordingly, the RO should arrange for the Veteran to undergo VA examination by a psychiatrist or psychologist, at a VA medical facility. It is noted that, in July 2001, the Veteran is shown to have refused psychiatric evaluation at the VA medical center. The Veteran is hereby advised further examination is essential to adjudication of the claim remaining on appeal, and that failure to report to the scheduled examination, without good cause, may well result in denial of the claim for service connection (as the original claim will be considered on the basis of the evidence of record). See 38 C.F.R. § 3.655 (2011). Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant and death of an immediate family member. The Board reminds the Veteran that corresponding to VA's duty to assist him is a duty on his part to cooperate with VA in developing a claim. 38 C.F.R. § 3.655; see Wood v. Derwinski, 1 Vet. App. 190, 193 (1991) (noting that "[t]he duty to assist is not always a one-way street").

Prior to arranging for the Veteran to undergo further examination, the RO should obtain and associate with the claims file all outstanding VA treatment records. The claims file currently includes records from the Salisbury VAMC dated up to March 2007; hence, there exists the possibility that more recent records from this facility may exist. The Board emphasizes that records generated by VA facilities that may have an impact on the adjudication of a claim are considered constructively in the possession of VA adjudicators during the consideration of a claim, regardless of whether those records are physically on file. See Dunn v. West, 11 Vet. App. 462, 466-467 (1998); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992). Hence, the RO should obtain from the Salisbury VAMC all outstanding records of mental health evaluation and/or treatment of the Veteran dated since March 2007, following the current procedures prescribed in 38 C.F.R. § 3.159(c) as regards to requests for records from Federal facilities. 

Furthermore, to ensure that all due process requirements are met and that the record before the examiner is complete, the RO should also give the Veteran another opportunity to provide information and/or evidence pertinent to the claim remaining on appeal. The RO's letter to the Veteran should explain that he has a full one-year period for response. See 38 U.S.C.A. § 5103(b)(1) (West 2002); but see also 38 U.S.C.A. § 5103(b)(3) (West Supp. 2011) (amending the relevant statute to clarify that VA may make a decision on a claim before the expiration of the one-year notice period). 

Thereafter, the RO should attempt to obtain any additional evidence for which the Veteran provides sufficient information, and, if needed, authorization, following the current procedures prescribed in 38 C.F.R. § 3.159 (2011). 

The actions identified herein are consistent with the duties imposed by the Veterans Claim Act of 2000 (VCAA). See 38 U.S.C.A. §§ 5103, 5103A (West 2002); 38 C.F.R. § 3.159 (2011). However, identification of specific actions requested on remand does not relieve the RO of the responsibility to ensure full compliance with the VCAA and its implementing regulations. Hence, in addition to the actions requested above, the RO should also undertake any other development and/or notification action deemed warranted by the VCAA prior to adjudicating the claim on appeal. The RO's adjudication of the claim should include consideration of all evidence added to the record since the RO's last adjudication of the claim.

Accordingly, this matter is hereby REMANDED to the RO, via the AMC, for the following action:

1. The RO should obtain from the Salisbury VAMC all records of mental health evaluation and/or treatment of the 
Veteran since March 2007. The RO must follow the procedures set forth in 38 C.F.R. § 3.159(c) with respect to requesting records from Federal facilities. All records/responses received should be associated with the 
claims file. 

2. The RO should send to the Veteran and his representative a letter requesting that the Veteran provide sufficient information, and if necessary, authorization, to enable it to obtain any additional evidence pertinent to the claim for service connection for a psychiatric disability. The RO should explain the type of evidence that is the Veteran's ultimate responsibility to submit.

The RO's letter should clearly explain to the Veteran that he has a full one-year period to respond (although VA may decide the claim within the one-year period).

3. If the Veteran responds, the RO should assist him in obtaining any additional evidence identified by following the current procedures set forth in 38 C.F.R. § 3.159. All records and responses received should be associated with the claims file. If any records sought are not obtained, the 
RO should notify the Veteran and his representative of the records that were not obtained, explain the efforts taken to 
obtain them, and describe further action to be taken.

4. After all records and/or responses received from each contacted entity have been associated with the claims file, the RO should arrange for the Veteran to undergo VA examination, by a psychiatrist or psychologist, at a VA medical facility. The entire claims file, to include a complete copy of this REMAND, must be made available to the individual designated to examine the Veteran, and the examination report should include discussion of the Veteran's documented medical history and assertions. 

All appropriate tests and studies should be accomplished, to include psychological testing, if warranted (with all results made available to the examining psychiatrist or psychologist prior to the completion of his or her report), and all clinical findings should be reported in detail.

The examiner should clearly identify all current psychiatric disability(ies), to include major depression and/or anxiety. Then, with respect to each such diagnosed disability, the examiner should provide an opinion, consistent with sound medical judgment, as to whether it is at least as likely as not (i.e., there is a 50 percent or greater probability) that the disability had its onset in, or is otherwise medically-related to service, to include on the basis of aggravation (worsening beyond natural progression of the "nervousness" reported at service entry.

The examiner should consider and discuss the in- and post-service records, the Veteran and his representative's assertions, and the opinions of private care providers who discuss the relationship between the Veteran's symptoms and his father's (post-service) death. 

The examiner should set forth all examination findings, along with complete rationale for the conclusions reached, in a printed (typewritten) report.

5. To help avoid future remand, the RO must ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND. 
If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. Stegall v. West, 11 Vet. App. 268 (1998).

6. After completing the requested action, and any additional notification and/or development deemed warranted, the RO should adjudicate the claim for service connection for an acquired psychiatric disability, to include anxiety and major depressive disorder, in light of all pertinent evidence and legal authority. 

7. If the benefit sought on appeal remains denied, the RO must furnish to the Veteran and his representative an 
appropriate supplemental SOC (SSOC) that includes clear reasons and bases for all determinations, and afford them an appropriate time period for response before the claims file is returned to the Board for further appellate consideration.

The purpose of this REMAND is to afford due process, and to accomplish additional development and adjudication; it is not the Board's intent to imply whether the benefits requested should be granted or denied. The Veteran need take no action until otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999); Colon v. Brown, 9 Vet. App. 104, 108 (1996); Booth v. Brown, 8 Vet. App. 109 (1995); Quarles v. Derwinski, 3 Vet. App. 129, 141 (1992).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court 
of Appeals for Veterans Claims for additional development or other appropriate 




action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).



______________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs