**Arthur HICKSON, Appellant,**

v.

**Togo D. WEST, Secretary of Veterans Affairs, Appellee.**

**No. 96–1669.**

United States Court of Veterans Appeals.

Aug. 17, 1998.

and Vito A. Clementi, Washington, DC, were on the pleadings for appellee.

Before FARLEY, IVERS, and STEINBERG, Judges.

FARLEY, Judge:

This is an appeal from a November 27, 1996, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to service connection for a low back disorder. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the BVA.

## I. BACKGROUND

The appellant, Arthur Hickson, served on active duty in the U.S. Air Force from July 1968 to February 1969. *See* Record (R.) at 5. The appellant's enlistment examination revealed mild pes planus. R. at 12. His service medical records (SMRs) document hip pain with the impression of a strain in July 1968 (R. at 14), a provisional diagnosis of an L–5 strain in July 1968 (R. at 15), low back pain with no injury noted in August 1968 (R. at 16, 18, 19), and low back pain in October 1968 with a suggestion that perhaps the appellant was malingering (R. at 17). The appellant also complained of a shoulder muscle strain in October 1968 (R. at 20) and back pain in December 1968 (R. at 21–22). In January 1969 the appellant was processed for an administrative discharge. His discharge examination revealed mild pes planus, and a full orthopedic workup of his back, including x-rays which were normal, found no organic disease and a full range of motion. R. at 23–24. The examiner also noted borderline mental retardation with suspected recruiter influence in passing the qualifying test. R. at 24–25, 27.

In March 1969, the appellant submitted a claim for a low back disability. R. at 44–47. A special orthopedic examination in April 1969 revealed a Grade II swayback posture, a supple spine, and pain-free motion. R. at 53. The neurological examination of the lower extremities was "completely normal" and x-rays revealed no degenerative arthritic changes. *Id.* However, unilateral spondylo-

Arthur Hickson, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel;

lysis on the left was shown by x-ray. The diagnosis was postural low back strain. *Id.* A radiographic report noted a "transitional vertebra at the S1 level with fusion with the sacrum on the right and not on the left." R. at 54. Body heights and disc spaces were intact with no evidence of spondylolisthesis, and the examiner's impression was "[t]ransitional vertebrae at the S1 level, otherwise normal lumbar spine." *Id.* His claim was denied in a June 1969 rating decision in which the VA regional office (RO) found that the appellant's spondylolysis with postural low back strain was a constitutional or developmental abnormality and therefore was not a disability under the law. R. at 59.

The appellant thereafter submitted various statements and hospital records explaining that he had been enrolled in a karate school prior to service, that he had had no back problems prior to service, and that he had been treated for back problems during service at a private hospital in December 1968. R. at 62–73. A March 1970 x-ray report documented partial lumbarization of S–1, intact apophysial joints, and no significant change from the April 1969 x-ray. R. at 83. Following a VA orthopedic examination, he was diagnosed with left spondylolysis and postural low back strain. R. at 84. In August 1970, the Board issued a decision affirming the denial of service connection for a low back disorder. R. at 89–92. The Board concluded that the appellant's spondylolysis and postural low back strain were "congenital or developmental defects and not diseases or injuries for which service connection may be granted." R. at 92. The Board also found that the appellant's low back disorder was not aggravated in service. *Id.*

In May 1972, the appellant submitted various medical records from 1970 and 1971. A May 1970 examination found that the appellant had grade III lumbar lordosis and generally poor posture, but that he had a full range of motion and no neurologic abnormalities. R. at 97. In May 1972, a confirmed rating decision was issued. R. at 101. Following a 1973 welfare examination, the appellant submitted the report, which documented lumbar disorder. R. at 105. A June 1974 x-ray examination noted "transitional vertebra at S1 with some lumbarization and corresponding narrowing of the first sacral interspace," but no neurological disease was found. R. at 117–19. There also appears to be a handwritten notation of "status, arthralgia, lower back, post traumatic," but there is no comment on the nature of the underlying trauma. R. at 122. An October 1974 private examination documented nothing new regarding the appellant's back. R. at 124–33. A November 1979 VA examination noted "six lumbar vertebral bodies with partial sacralization on the right." R. at 139. The examination was otherwise unremarkable. A December 1979 VA compensation and pension examination revealed "status post-trauma of lumbosacral spine with minimal residual." R. at 149, 152. In February 1980, Dr. John Terry submitted a statement indicating that the appellant was unable to engage in substantially gainful employment because of low back syndrome, tendinitis, and colostomy due to an old gunshot wound to the abdomen. R. at 154.

The appellant sought to reopen his low back claim in July 1981, stating that he had had no preservice back condition. R. at 157. His mother and sister submitted similar statements. R. at 160–61. In further support of his application, he submitted a letter dated June 1981 from Dr. John Terry, who opined that the appellant's back condition was not developmental or congenital, but was the result of trauma in service. R. at 159. In an August 1981 rating decision, the RO concluded that the appellant had not submitted new and material evidence and declined to reopen his claim. R. at 165. A November 1981 statement from a chiropractor documented "[c]hronic closed dislocations of L4 and L3 with lumbopelvic myotonia, complicated by sacralization of L5, accompanied by vertebrogenic lumbalgia and recurrent lower limb vertebrogenic radicular syndromes." R. at 169. The chiropractor also noted that the "congenital status of L5 ... cannot be corrected." *Id.* A September 1982 BVA decision denied service connection for the back condition. R. at 183–90. The Board found that the additional evidence did not show incurrence or aggravation of a back disability in service. R. at 188.

In November 1993, the appellant was examined for back pain. R. at 195. In a December 1993 rating decision, the RO determined that new and material evidence had not been submitted to reopen the appellant's claim for a back condition. R. at 223. The appellant filed a Notice of Disagreement and a personal hearing was held. In a December 1995 decision, the Board found that the June 1981 statement from Dr. Terry, as well as other evidence which documented a current back condition, constituted new and material evidence to reopen the claim. As a result, the Board remanded the claim to allow the RO to obtain any additional available treatment records, to allow an examination by a board certified orthopedist, and to readjudicate the claim. R. at 282–89.

Records documenting unrelated problems were then presented (R. at 296–306), as well as records documenting back pain (R. at 307, 311, 318, 320, 322). A November 1993 x-ray examination noted shallow lumbar lordosis and no significant osseous abnormality. R. at 324. An April 1996 VA spine examination revealed decreased disk space at L5–S1 with no significant spondylosis, and an impression of degenerative disk disease with chronic low back pain. R. at 335. The appellant denied any significant trauma. The examiner opined that "[o]verall, [the appellant's] physical exam is quite normal." *Id.* He further opined that "[i]t would be quite difficult to prove an association between the appellant's vague assertions and his present condition." *Id.* Thereafter, the appellant complained that the examiner did not review his claims file. R. at 337. In May 1996, an orthopedic specialist opinion was requested. R. at 340–41. After reviewing the claims file, the specialist opined that "there is no indication of any relationship between the current problems and any service activity." R. at 344. It was felt that the appellant's back condition was "totally unrelated to his service time." *Id.* The RO then issued a Supplemental Statement of the Case and found that "the veteran's claim remains disallowed as there is no evidence of a nexus between current back complaints and any incident in service." R. at 349. In November 1996, the Board issued the decision that is the subject of this appeal. The Board concluded that the appel-lant's claim for service connection for a low back disorder was not well grounded and denied the claim. This appeal followed.

## II. ANALYSIS

Before reopening a claim, the Board is required to preliminarily decide that new and material evidence has been submitted. *See Barnett v. Brown,* 83 F.3d 1380 (Fed.Cir. 1996) (holding "that the Board does not have jurisdiction to consider a claim which it previously adjudicated unless new and material evidence is presented"); *see also Butler v. Brown,* 9 Vet.App. 167, 171 (1996). Inherent in the decision on appeal was a determination by the Board that it had jurisdiction by virtue of the submission of new and material evidence from the appellant. (In fact, in its non-final December 1995 decision which remanded the claim to the RO the Board had already made a determination that there was new and material evidence.) As a preliminary matter, this Court must first determine whether new and material evidence has been submitted to reopen the appellant's claim—a prerequisite to BVA jurisdiction over the merits of the claim. *See Barnett, supra.*

The Board must perform a two-step analysis when a veteran seeks to reopen a final decision based on new and material evidence. *See Manio v. Derwinski,* 1 Vet. App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the last final disallowance is "new and material." *Id.* If it is, the Board must then reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Id.; Jones v. Derwinski,* 1 Vet.App. 210, 215 (1991). The issue of whether evidence is new and material is a conclusion of law which the Court reviews de novo. *Beausoleil v. Brown,* 8 Vet.App. 459, 463 (1996).

In *Evans v. Brown,* 9 Vet.App. 273, 283 (1996), this Court stated that step one of the *Manio* two-step process, the determination of whether the evidence is new and material, involves three questions. The first is whether the newly presented evidence is actually "new" in the sense that it was not of record at the time of the last final disallow-

ance of the claim and is not merely cumulative of other evidence of record. *Id.; Struck v. Brown,* 9 Vet.App. 145, 151 (1996). The second question is whether the evidence is "probative" of the "issue at hand," the basis for the last disallowance. *Evans,* 9 Vet.App. at 283. Evidence is "probative" when it "tend[s] to prove, or actually prov[es] an issue." BLACK'S LAW DICTIONARY 1203 (6th ed.1990). The third question, which arises if the evidence submitted is both new and probative, is whether, in light of all of the evidence of record, there is a reasonable possibility that the outcome of the claim on the merits would be changed. *See Dolan v. Brown,* 9 Vet.App. 358, 361 (1996); *Evans,* 9 Vet.App. at 283. Affirmative answers to both materiality questions are required in order for "new" evidence to be "material." *See id.; Blackburn v. Brown,* 8 Vet.App. 97, 102 (1995). As to those two "materiality" components, the evidence is presumed credible for the purpose of determining whether the claim should be reopened. *See Evans, supra; Justus v. Principi,* 3 Vet.App. 510, 513 (1992).

 In the instant case, the Court finds that new and material evidence has not been submitted and that the claim should never have been reopened. The evidence submitted since the last final disallowance of the claim in September 1982 includes VA outpatient treatment records from October 1992 through January 1996, hearing testimony, VA examination reports from April and May 1996, and the appellant's own contentions. Although this evidence is new, none of it constitutes material evidence because none of it relates his current condition to service, which was the basis for the Board's 1982 denial of the claim. *See Moray v. Brown,* 5 Vet.App. 211, 214 (1993) (lay evidence that is insufficient to well ground a claim under 38 U.S.C. § 5107(a) is insufficient to reopen a claim); *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995) (generally requiring medical evidence of a nexus between current disability and service in order to well ground a claim). Although the Board in its December 1995 remand decision and in the decision on appeal considered the June 1981 statement from Dr. John Terry, who opined that the appellant's condition "resulted from trauma to back while serving in the U.S. Air Force" (R. at 159), that evidence is not new because it was submitted prior to the last final disallowance in September 1982. *See Evans,* 9 Vet.App. at 285. Finally, although the appellant contends that his current back disorder was caused by an injury in service, lay assertions of medical causation cannot suffice as new and material evidence to reopen a claim. *See Moray,* 5 Vet.App. at 214.

The appellant has long complained of back pain, but his condition initially was found to be a constitutional defect with no service aggravation, and there has been no objective medical evidence of an etiological relationship to an in-service incident submitted since the last final disallowance. Despite the Board's purported determination that the appellant had not submitted a well-grounded claim, it had already essentially decided that the claim was well grounded in its December 1995 decision that new and material evidence had been submitted to reopen the claim. *See Gobber v. Derwinski,* 2 Vet.App. 470 (1992) (" '[n]ew and material' evidence is, by its nature, well[ ]grounded, i.e., evidence that, if believed, would provide a 'reasonable possibility' that the outcome would be changed"). As this Court has suggested, when the issue is reopening, the question of well groundedness is not for determination. *See Molloy v. Brown,* 9 Vet.App. 513, 516 (1996). The only question before the Board under *Barnett* on a claim to reopen is whether there is new and material evidence to reopen. In this case, the Board had already decided—incorrectly—that issue.

### III. CONCLUSION

For the reasons set forth above, the Court holds that there is no new and material evidence to reopen the appellant's claim for service connection for a back disorder. Accordingly, the November 27, 1996, decision of the Board of Veterans' Appeals, to the extent it disallowed the appellant's claim, is AFFIRMED. *See Edenfield v. Brown,* 8 Vet. App. 384 (1995) (en banc).