# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-4776

WILLIAM SHEPPARD, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided March 15, 2021)

*Jennifer L. Lohnes*, of Charlottesville, VA, and *Benjamin R. Binder*, of Tampa, FL, for the appellant.

*William A. Hudson, Jr.,* Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; Christopher W. Wallace, Deputy Chief Counsel; and *Abigail J. Schopick,* all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and ALLEN and FALVEY, *Judges*.

FALVEY, *Judge*, filed the opinion of the Court. BARTLEY, *Chief Judge*, filed a dissenting opinion.

FALVEY, *Judge*: Army veteran William Sheppard appeals through counsel a May 28, 2019, Board of Veterans' Appeals decision denying reopening of claims for service connection for an unspecified right-hand disability (other than the service-connected residuals of removal of a ganglion cyst in the right hand) and for a mental disease. The appeal is timely and the Court has jurisdiction to review the Board decision. *See* 38 U.S.C. §§ 7252(a), 7266(a). On August 10, 2020, the Court issued a single-judge decision affirming the May 2019 Board decision. On August 31, 2020, Mr. Sheppard filed a motion for single-judge reconsideration or, in the alternative, panel review. The Court grants panel review and will withdraw the August 10, 2020, decision and issue this decision in its stead.

We are first asked to decide whether the Board failed to provide notice that there was a new-and-material-evidence issue where the RO had previously reopened the unspecified right-hand disability and mental disease claims. Although *Jackson v. Principi*, 265 F.3d 1366, 1369

(Fed. Cir. 2001), was issued before VA promulgated 38 C.F.R. § 20.101(d),[1] *Jackson's* analysis is applicable to cases like Mr. Sheppard's, particularly because § 20.101(d) does not apply to requests to reopen claims. Further, Mr. Sheppard did not meet his burden of proving prejudice on appeal. Thus, the arguments in his briefs and motion for panel review are unpersuasive or without merit.

We are also asked to decide whether the Board erred by not addressing reasonably raised claims related to the unspecified right-hand disability and mental disease claims. But Mr. Sheppard's arguments about these matters are underdeveloped and unpersuasive. For these reasons, we will affirm the May 2019 Board decision.

## I. FACTS

Mr. Sheppard served on active duty from September 1971 to May 1972. Record (R.) at 2954. In June 2006, he filed a claim for service connection for his right hand. R. at 3958. In September 2006, a regional office (RO) granted service connection for right wrist ganglion cyst removal and assigned a noncompensable rating effective June 2006, finding that a VA examination had shown that, although the veteran reported intermittent pain and decreased strength in the right hand, a compensable rating was not warranted because there was no limited range of motion. R. at 3941-42.

In July 2007, he requested service connection for stress and depression. R. at 3932. In August 2007, Mr. Sheppard stated that he experienced stress and depression after developing frostbite during basic training and because of his in-service hand surgery. R. at 3911. In October 2007, he stated that his hand burned and "sho[]t sharp pain up into my arm since I have been on crutches." R. at 3897 (also stating he wore a wrist brace). In March 2008, the RO denied service connection for a mental disease and an unspecified right hand disability (other than the service-connected residuals for cyst removal). R. at 3817-19. The veteran did not appeal this decision and it became final.

In November 2010, Mr. Sheppard requested that VA reopen his right hand claim. R. at 3758. In August 2011, the RO declined to reopen the unspecified right hand disability claim because new and material evidence had not been submitted. R. at 3632 (stating that records from the Columbia VA medical center were reviewed but that there was no evidence establishing a

---

[1] Effective February 2019, VA redesignated this regulation as 38 C.F.R. § 20.104(c)-(d).

2

nexus between his condition and service). The veteran did not appeal this decision and it too became final.

In March 2013, Mr. Sheppard again requested that VA reopen his right hand claim. R. at 3620 (noting pain and numbness). In March 2014, a VA examiner stated that the veteran was service connected for his right wrist and that his condition continued to worsen, noting that his wrist burned, that there was numbness and tingling in his fingers, and that pain radiated down from his neck. R. at 3557. The examiner also indicated that the veteran reported that he was diagnosed with carpel tunnel syndrome in 2000, but that he was later informed that he did not have that condition. *Id*. (examiner noting that his splint was a carpel tunnel splint and that his symptoms correlated with that condition). The examiner diagnosed limited wrist motion. R. at 3556.

In April 2014, the RO granted a 10% rating for residuals of right wrist cyst removal, effective March 2013, basing the increased rating on painful motion of the wrist under 38 C.F.R. § 4.59. R. at 3105-07 (noting that that regulation allows for consideration of functional loss due to painful motion). But the RO declined to reopen the unspecified right hand disability and mental disease claims because new and material evidence had not been submitted. R. at 3105, 3109 (stating that records from the Columbia VA medical center had been reviewed for both conditions). That same month, Mr. Sheppard filed a Notice of Disagreement (NOD) as to that decision. R. at 3096-102.

In June 2014, the RO issued another rating decision, again declining to reopen the unspecified right hand disability and mental disease claims because new and material evidence had not been submitted. R. at 2990-92 (stating that Social Security Administration (SSA) records had been reviewed). In October 2014, he filed another NOD, stating that if he did not wear his wrist brace all the time his hand would ache and burn and that he was stressed and depressed because he did not have control of his daily activities. R. at 2956-76 (noting that he had to take pain medication).

In September 2016, the RO issued a Statement of the Case (SOC), finding that the unspecified right hand disability and mental disease claims were reopened, but denying them on the merits because the SSA, VA treatment, and private medical records did not establish a nexus between those conditions and service. R. at 98-99. In October 2016, Mr. Sheppard perfected his appeal and requested a Board hearing at his local RO. R. at 58-60. In June 2017, he amended his request for a hearing in the Board's Washington, D.C., office. R. at 44-45. In April 2019, VA

informed him that it had scheduled his hearing, R. at 24, and, later that month, the veteran withdrew his request, stating that a hearing was unnecessary to decide his case and that he did not want to travel "to try and provide any new information" about his conditions, R. at 18.

In May 2019, the Board issued the decision on appeal. The Board found that new and material evidence had not been submitted and thus denied reopening the unspecified right hand disability and mental disease claims. R. at 5.


## II. ANALYSIS

### A. *Board Declining to Reopen the Unspecified Hand Disability and Mental Disease Claims*

First, Mr. Sheppard states that whether new and material evidence has been submitted is a jurisdictional requirement that the Board must consider. Appellant's Brief (Br.) at 6-7. Indeed, "the Board has a jurisdictional responsibility to consider whether it was proper for a claim to be reopened." *Jackson v. Principi*, 265 F.3d 1366, 1369 (Fed. Cir. 2001). He therefore argues that 38 C.F.R. § 20.101(d) applies to his case and that, contrary to the regulation, the Board did not provide him notice or the opportunity to respond. Appellant's Br. at 6-7.

Before February 2019, § 20.101(d) authorized the Board to "address questions pertaining to its jurisdictional authority to review a particular case, including, but not limited to, determining whether [NODs] and Substantive Appeals are adequate and timely, at any stage in a proceeding before it, regardless of whether the agency of original jurisdiction addressed such question(s)." 38 C.F.R. § 20.101(d) (2018).

That regulation also provided that

> when the Board, on its own initiative, raises a question as to a potential jurisdictional defect, all parties to the proceeding and their representative(s), if any, will be given notice of the potential jurisdictional defect(s) and granted a period of 60 days following the date on which such notice is mailed to present written argument and additional evidence relevant to jurisdiction and to request a hearing to present oral argument on the jurisdictional question(s).

*Id.*[2]

---

[2] Effective February 2019, VA redesignated this regulation as 38 C.F.R. § 20.104(c)-(d). Under § 20.104(c),

> [t]he Board shall decide all questions pertaining to its jurisdictional authority to review a particular case. When the Board, on its own initiative, raises a question as to a potential jurisdictional defect, all parties to the proceeding and their representative(s), if any, will be given notice of the potential jurisdictional defect(s) and granted a period of 60 days following the date on which such notice is

The Secretary asserts that Mr. Sheppard does not acknowledge that the U.S. Court of Appeals for the Federal Circuit has issued precedent on the matter of notice in this exact situation. Secretary's Br. at 9-10 (citing *Jackson*, 265 F.3d at 1369). The Secretary explains that the Federal Circuit addressed whether the Board must give notice when it determines that new and material evidence has not been submitted where the RO had previously reopened the claim. *Id*. The Secretary notes that the Federal Circuit found that a claimant is not prejudiced in such situations, even without additional notice, because of the large degree of overlap in the evidence that would be required for either reopening a claim or addressing that same claim on the merits. *Id*. (citing *Jackson*, 265 F.3d at 1370-71).

Mr. Sheppard responds that *Jackson* was issued before VA promulgated § 20.101(d) and that the due process provided in that regulation goes beyond the "fundamental principles of fairness" raised in *Jackson*. Appellant's Reply Br. at 1-3. The Court notes that *Jackson* was issued in September 2001; VA adopted § 20.101(d) in October 2001, 66 Fed. Reg. 53,339 (2001); and it became effective in November 2001, *id*. With that in mind, we will first address why § 20.101(d) (now § 20.104(c)-(d)) does not apply to requests to reopen claims, and then discuss why *Jackson* is thus still good law and applies to cases like Mr. Sheppard's.

### i. 38 C.F.R. § 20.101(d) (now 38 C.F.R. § 20.104(c)-(d))

In April 2001, VA proposed to amend its regulations to clarify that the Board may address questions related to its jurisdiction in the first instance. 66 Fed. Reg. 17,840 (2001). As background, VA explained that filing an appeal with the Board was a three-step procedure: (1) the claimant filed an NOD; (2) the agency of original jurisdiction (AOJ) issued an SOC; and (3) the claimant then filed a Substantive Appeal (SA). *Id*. at 17,841. VA noted that an August 1999 VA General Counsel (GC) precedent opinion held that the Board may address the question of the timeliness of a Substantive Appeal, no matter if the AOJ addressed that question. *Id*. (citing VA Gen. Coun. Prec 9-99 (Aug. 18, 1999)). The opinion further held that the Board may dismiss an

mailed to present written argument and additional evidence relevant to jurisdiction and to request a hearing to present oral argument on the jurisdictional question(s).

And, under § 20.104 (d)(1), for legacy appeals, claimants

have the right to appeal a determination made by the agency of original jurisdiction that the Board does not have jurisdictional authority to review a particular case. Jurisdictional questions which a claimant may appeal, include, but are not limited to, questions relating to the timely filing and adequacy of the Notice of Disagreement and the Substantive Appeal.

appeal when it discovers in the first instance that no Substantive Appeal had been filed in a case certified to it for appellate review, or that the Substantive Appeal was not timely filed. *Id.* The opinion noted, however, that the Board's dismissal of an appeal under those circumstances raised the possibility that a claimant will be prejudiced by not having been afforded the benefit of all procedural safeguards, such as the right to notice, to a hearing, and to submit evidence in support of a claim. *Id.* Thus, it found that, if the Board intended to dismiss an appeal on this basis, it should afford the claimant adequate procedural protections regarding notice and the opportunity to be heard. *Id.*

VA stated that the proposed regulation (§ 20.101(d)) was to make clear that the Board may dismiss an appeal when it determines that it lacks jurisdiction, regardless of the AOJ's failure to adjudicate the jurisdictional question. *Id.* at 17841. VA explained that the regulation would include a requirement that the Board ensure that no prejudice to a claimant would result from the Board's sua sponte consideration of a jurisdictional question. *Id.* VA concluded that the Board would thus follow procedural safeguards—including notice and the opportunity to submit additional evidence and argument on the relevant jurisdictional questions and addressing such questions at a hearing—before dismissing an appeal based on jurisdictional defects. *Id.* Effective February 2019, VA replaced the appeals process with a new review process that offered various review lanes, such as going straight from an initial AOJ decision to a Board appeal. 84 Fed. Reg. 138 (implementing the Veterans Appeals Improvement and Modernization of 2017 (AMA)). In so doing, VA redesignated § 20.101 as § 20.104 and, in § 20.104(c), removed references to procedural steps, such as NODs and SAs, that are not part of the AMA. *Id.* at 180. But, for legacy appeals, VA continued to include those procedural steps in § 20.104(d) when discussing jurisdictional questions. *Id.*[3]

Mr. Sheppard is correct that we assess a regulation's meaning by first reviewing its text. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993). In so doing, if no uncertainty exists, the "regulation then just means what it means—and the court must give it effect." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). Further, courts "must apply all traditional methods of interpretation to any rule, and must enforce the plain meaning those methods uncover." *Id.* at 2419.

Here, § 20.101(d) authorized the Board to address questions pertaining to its jurisdictional authority, including determining whether NODs and SAs are adequate and timely, at any stage in

---

[3] Although § 20.104(d) may not be a model of clarity, the parties raise no issue as to its validity and thus, because it is not relevant to addressing the parties' arguments, the Court will not address any such matter.

a proceeding before it; and that when the Board, on its own initiative, raised such a defect, it had to provide notice, an opportunity to submit argument and evidence, and a hearing. When VA redesignated this regulation as § 20.104(c)-(d) it continued to include the NOD and SA examples for legacy appeals. Thus, the plain language reflects that this regulation applies to situations in which the jurisdictional question (e.g., whether an NOD was timely or an SA was filed) differs from a question on the merits of the claim (e.g., whether there was a nexus warranting service connection).

Although the list of examples in the regulation is not exhaustive, the history of the regulation demonstrates that the regulation only be applied when the jurisdictional and merits questions differ. *See* 66 Fed. Reg. 17,841 (noting the prior three-step process for appealing to the Board (NOD, SOC, SA), providing an example from the 1999 GC opinion about SAs, and stating that the regulation provided the Board with authority to review relevant jurisdictional questions even if the AOJ did not address them); 84 Fed. Reg. 138 (VA changing the regulation to comply with the new AMA procedural steps); *see also Kisor*, 139 S. Ct. at 2415 (holding that, before concluding that a rule is ambiguous, a court must exhaust all the traditional tools of construction and, to make that effort, must carefully consider the text, structure, history, and purpose of a regulation). And, although § 20.101(d) notes that questions related to jurisdictional authority include, but are not limited to, determining whether NODs and SAs are adequate and timely, there is at least one other example, at least for legacy appeals, where the jurisdictional question would significantly differ from a merits question: whether there were any deficiencies regarding the SOC.

We acknowledge that, in the regulatory history, VA cited *Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996), a case in which the Board had denied a service-connection claim and then denied the claimant's request to reconsider its ruling after determining that no new and material evidence had been submitted. But VA cited that case not to include new and material evidence assessments under the regulation, but to emphasize the general requirement that any statutory tribunal must ensure that it has jurisdiction before adjudicating the merits and that a potential jurisdictional defect may be raised by the tribunal, sua sponte, or by any party at any stage in the proceedings. *Id*. (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–31 (1990)); *see* 66 Fed. Reg. 17,841 (VA, after citing *Barnett*, stating that the regulation made clear that the Board may address jurisdictional questions in the first instance and then noting the safeguards when the Board raised those questions). Indeed, it seems that VA intended to distinguish the new and material evidence

question from other jurisdictional matters because, when referencing *Barnett,* it used the phrase "in a case discussing the Board's jurisdiction *in another context.*" 66 Fed. Reg. 17,841.

We also note that the Board did not address Mr. Sheppard's request to reopen in the first instance. Instead, the RO first decided that matter. *See* R. at 7, 98-99. Further, logic seems to dictate that the Board did not sua sponte raise the issue of new and material evidence, given that it is statutorily obligated to always review whether there was new and material evidence sufficient to reopen a claim. *Prillaman v. Principi*, 346 F.3d 1362, 1365-66 (Fed. Cir. 2003) (noting that the decision in *Jackson* made clear that even when a claim was denied on the merits, the Board must review the RO's underlying new and material evidence determination to determine whether a claim was properly reopened). This underscores the difference between new and material evidence determinations and other jurisdictional matters. That is, no one should ever be surprised that the Board independently considered whether there was sufficient evidence to reopen a claim because it is required to do so. However, although the Board generally must ensure its jurisdiction, if it sua sponte raises an issue with an NOD, SOC, or SA, that may come as a surprise to a claimant and necessitates different evidence and argument than the merits of the claim.

In addition, how the Board disposes of requests to reopen claims versus other jurisdictional matters further demonstrates the distinction between the two. When the Board determines that there is no new and material evidence, it does not find that it lacks jurisdiction to consider the claim as a whole and thus dismiss the appeal of the claim, as it does for other jurisdictional matters. *See, e.g.*, *Fenderson v. West*, 12 Vet.App. 119, 128 (1999) (the Board determining that, because the appellant had not filed a Substantive Appeal as to two claims, those issues were not before the Board, while denying other claims it considered properly before it); *Marsh v. West*, 11 Vet.App. 468, 469-70 (1998) (the Board dismissing the veteran's appeal due to an untimely NOD); *see also Skaar v. Wilkie*, No. 17-2574, 2020 WL 7393453, at *13 (Vet. App. Dec. 17, 2020) (noting that, because no SOC had been issued regarding a claim, the Board may order the RO to complete the required procedural development); *Evans v. Shinseki*, 25 Vet.App. 7, 9-10, 14–15 (2011) (the Court holding that, under § 20.101(d), the Board had to provide notice of the perceived defect in the SA, where the Board had dismissed the claims because those issues were not included in the SA). Rather, the Board denies the request to reopen. *See, e.g.*, R. at 5 (here, the Board denying the request to reopen the claims for service connection for an unspecified right-hand disability and a mental disease); *Shade v. Shinseki*, 24 Vet.App. 110, 112 (2010) (the Board denying a request to

reopen a claim because a nexus opinion had not been provided); *see also Woehlaert v. Nicholson*, 21 Vet.App. 456, 459-60 (2007) (although holding that "a summary dismissal of the claim" is required if the Board finds that new and material evidence has not been submitted, the Court affirmed the Board's decision to deny the request to reopen because there was no new and material evidence).

The Federal Circuit's and our cases may characterize the new and material evidence question as a jurisdictional one. *See generally* Dissent; *see also Prillaman v. Principi*, 346 F.3d 1362, 1365 (Fed. Cir. 2003) (finding that the "mere use of the term 'jurisdictional'" to characterize new and material evidence determinations does not invoke de novo review at all levels). But how the Board has always handled and disposed of requests to reopen versus other jurisdictional matters and that our Court has never faulted the Board for denying a request to reopen, rather than dismissing the appeal of that claim, further demonstrates the distinction between the two. *See* 66 Fed. Reg. 17,841 (VA explaining that § 20.101(d) makes clear that the Board may *dismiss* an appeal when it determines that it lacks jurisdiction, regardless of the RO's failure to adjudicate the jurisdictional question); *id.* (VA further explaining that the regulation will provide procedural safeguards before the Board *dismisses* an appeal based on jurisdictional defects).

And, as we will discuss next in relation to *Jackson*, when the Board reviews a request to reopen a claim, it must assess whether new and material evidence was submitted. And, although we recognize that a new and material evidence determination differs from a determination on the merits, *see Shade*, 24 Vet.App. at 117, the assessment on whether to reopen necessarily overlaps with the merits of the claim. For example, the Board would review the same or similar evidence to determine whether there was new and material evidence of nexus sufficient to reopen the claim as it would to assess whether there was nexus warranting an award of service connection. But, in the cases in which § 20.101(d) (now § 20.104(c)-(d)) applies, the Board would review different evidence to determine jurisdiction (e.g., evidence of whether an NOD was timely, an SOC was issued, or an SA was filed) than it would to assess the merits (e.g., evidence of nexus warranting service connection). Thus, in those situations, the additional procedural safeguards are necessary because a claimant would presumably have only submitted argument on the merits of the claim (e.g., nexus), and not on a jurisdictional issue (e.g., whether an NOD was timely, an SOC was issued, or an SA was filed). That is not true for requests to reopen claims and thus § 20.101(d) (now § 20.104(c)-(d)) does not apply to those cases.

*ii.* Jackson

As a result, because § 20.101(d) (now § 20.104(c)-(d)) does not apply to requests to reopen, we find that *Jackson* is still germane. And although *Jackson* was issued before VA adopted § 20.101(d) and Mr. Sheppard does not raise a due process argument, the Federal Circuit's reasoning and logic in *Jackson* are still equally valid and persuasive here. Mr. Jackson argued that the Board violated his due process rights because the RO had determined that new and material evidence existed and he was not notified that the new-and-material-evidence issue would be in dispute before the Board. *Jackson*, 265 F.3d at 1368 (noting that the RO had denied the claim on the merits because Mr. Jackson had not established that his back disability related to service). The Federal Circuit determined that Mr. Jackson was on notice that he still needed to persuade the Board that his newly submitted evidence established a nexus between his disability and service. *Id*. at 1370-71.

Similarly, Mr. Sheppard was also on notice that he still needed to persuade the Board that his newly submitted evidence showed a nexus between his unspecified hand and mental health disabilities and service. *See* R. at 98-99 (in the September 2016 SOC, the RO denied these claims because the SSA, VA treatment, and private medical records he submitted did not establish a nexus between those conditions and service); *see also* R. at 3632 (in August 2011, the RO declined to reopen the unspecified hand claim because the VA medical records he submitted did not establish a nexus between that condition and service). Moreover, like in *Jackson*, there is a large degree of overlap in the evidence necessary to reopen the unspecified hand and mental health claims and to address those same claims on the merits because both require evidence of nexus. *See* R. at 7-8 (the Board declining to reopen the claims because there was no evidence of an in-service disability or injury (separate from the cyst removal), in-service incurrence, or nexus); *see also* R. at 98-99, 3632; *Jackson*, 265 F.3d at 1370-71. The Court thus finds Mr. Sheppard's argument—that "[t]his issue is more than a procedural oversight, as the [decision review officer] did not notify [a]ppellant of his right to submit evidence and argument specific to reopening—which is wholly separate from a merits analysis," Appellant's Br. at 9—unpersuasive. And, although we recognize that there is a lower threshold for reopening a claim than for establishing service connection, *see Shade*, 24 Vet.App. at 117, both questions—whether there was a reasonable possibility of substantiating the claims and whether service connection was warranted for the unspecified hand disability and mental disease—depend on whether there was evidence of a nexus.

### iii. Prejudicial error analysis

In addition, Mr. Sheppard has identified no newly submitted evidence that shows nexus, *see* Appellant's Br. at 4-9; Appellant's Reply Br. at 1-3, and the Court is aware of none. Nor does the veteran argue that he has any such evidence to have provided the Board, had it informed him that there may be a new-and-material-evidence issue. *See* Appellant's Br. at 9 (stating simply that he "could have" presented arguments and additional evidence); *see also Jackson*, 265 F.3d at 1370-71 (finding that nexus evidence would also support the merits of a claim). Thus, even if § 20.101(d) (now § 20.104(c)-(d)) applied, Mr. Sheppard has failed to prove that he was prejudiced by any Board failure to provide notice under that regulation or to discuss it. *See* 38 U.S.C. § 7261(b)(2) (mandating that the Court must "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009) (stating that the appellant bears the burden of proving prejudice on appeal); *Simmons v. Wilkie*, 30 Vet.App. 267, 280 (2018) (discussing the appellant's burden to prove prejudicial error).

The veteran also asserts that, had the Board informed him that it did not consider his claims reopened, he could have attended a hearing and presented evidence.[4] Appellant's Br. at 9. But, the Board gave him the opportunity to provide nexus evidence during a hearing, and Mr. Sheppard withdrew his request because he felt that a hearing was unnecessary to decide his case and he did not want to travel "to try and provide any new information" about his conditions. R. at 17-19; *see also* R. at 44-45, 58-60 (amending his request for a Board hearing at his local RO and asking that it instead be held at the Board's offices in Washington, D.C., before the withdrawal). To be clear, we recognize that a new and material evidence determination is different from a merits determination. But, as stated, there is overlap in the evidence necessary to reopen the unspecified hand and mental health claims and to address those same claims on the merits because both require evidence of nexus. It is unclear how the outcome would have changed if the Board had informed Mr. Sheppard about the lower hurdle of reopening (a gateway to obtaining benefits), where the veteran stated, on the merits (the higher hurdle), that he did not want to provide any new information about his conditions. In other words, even if he cleared the lower hurdle, he had no

---

[4] In his motion for panel review, Mr. Sheppard argues that this statement contradicts the Court's earlier statement that he did not argue that he had any evidence to provide the Board had it informed him there was a jurisdictional issue. Mot. for Panel Review at 5. The veteran misunderstands the Court's statements. Although Mr. Sheppard generally asserts that he "could have" presented additional evidence, *see* Appellant's Br. at 9, he never specifies what that evidence is, aside from stating it would be hearing testimony, Mot. for Panel Review at 5. This is insufficient to show prejudicial error. *See Sanders*, 556 U.S. at 409-10.

argument or evidence to provide at the hearing, and still offers none, that would establish the actual benefit he sought (service connection for his conditions). The Court is thus also not convinced that he was prejudiced by any Board error related to a hearing. *See* 38 U.S.C. § 7261(b)(2); *Sanders*, 556 U.S. at 409-10; *Simmons*, 30 Vet.App. at 280. Thus, contrary to Mr. Sheppard's request, we will not reverse the Board's decision to decline to reopen the unspecified hand disability and mental disease claims based on his arguments above.

### B. Reasonably Raised Hand Claim

Next, Mr. Sheppard presents several underdeveloped arguments regarding a reasonably raised theory related to his unspecified hand disability claim.

First, he references March and June 2014 notations of hand pain and weakness and then contends that the "Board acknowledged this newly submitted evidence as constituting evidence of secondary service connection, referring to 'a March 2014 VA examination where *right-hand pain and weakness were attributed to the right wrist disability*.'" Appellant's Br. at 12 (citing R. at 7). But, he asserts that "the Board also failed to address whether this newly submitted evidence, combined with VA's duty to assist the veteran, and considering other evidence of record, raised a reasonable possibility of substantiating the claim, which would require a reopening of the claim." *Id*.; *see* Mot. for Panel Review at 7 (stating that the March 2014 VA examination raised a theory of secondary entitlement and is new and material evidence on the issue).

The Secretary argues that the veteran's argument is unclear, that he is already compensated for painful motion associated with his service-connected wrist condition, and that his current appeal is for an unspecified right-hand disability *not* related to the service-connected wrist condition. Secretary's Br. at 14-15. Mr. Sheppard does not respond to these issues in his reply brief. *See* Appellant's Reply Br. at 1-4. Without further development of his argument or an explanation from Mr. Sheppard, which his motion for panel review does not provide, the Court cannot identify any error related to this assertion; particularly where, following the March 2014 VA examination, the April 2014 RO decision increased his rating for cyst removal residuals based on painful motion of the wrist. *See* R. at 3106-07 (RO citing the March 2014 examination); *see also Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court will not entertain underdeveloped arguments).

Second, Mr. Sheppard summarily contends that the March 2014 VA examiner "alluded that the [a]ppellant may now have carpal tunnel syndrome, but the examiner failed to opine as to

whether or not this could be related to his wrist problems, and the Board failed to consider or properly develop the claim." Appellant's Br. at 12. Like the Secretary, Secretary's Br. at 15-16, the Court is unsure as to what the veteran is trying to argue here, *see also* Appellant's Reply Br. at 1-4 (not addressing this issue); and, therefore, we will not entertain this contention, *see Locklear*, 20 Vet.App. at 416. Even so, we note that, after conducting an in-person examination and considering the veteran's statement about pain and a prior carpal tunnel diagnosis and noting his splint, the March 2014 examiner diagnosed limited wrist motion, R. at 3556, and, as stated, the RO increased his rating for cyst removal residuals based on this painful motion, R. at 3106-07. In his motion for panel review, Mr. Sheppard summarily states that he had a carpal tunnel diagnosis and a present disability would be new and material evidence that the Board did not properly consider. Mot. for Panel Review at 6. This argument is still underdeveloped, *see Locklear*, 20 Vet.App. at 416, and, at any rate, should have been elaborated on in his briefs.

Third, Mr. Sheppard notes that, in a September 2015 statement, he reported that he gets sharp pains in his hands when he uses his walker or crutches, and that he uses his walker and crutches at times due to his service-connected bilateral foot condition. Appellant's Br. at 12-13 (citing R. at 2564). The medical record he cites documents assistive device use due to several disabilities related to his back, knee, and foot conditions. R. at 2564; *see* R. at 2993-94 (the veteran appears to be service connected for residuals of frostbite in the right and left feet, but not for a back or knee condition). He then summarily states that the Board failed to consider this as a secondary condition and argues that remand is required for correction. Appellant's Br. at 13; *see also* Appellant's Reply Br. at 1-4 (not addressing this issue).

The Court agrees with the Secretary that his argument is underdeveloped, Secretary's Br. at 16-17, and thus we will also not entertain it, *see Locklear*, 20 Vet.App. at 416. But we note that the September 2015 statement regarding hand pain while using assistive devices appears cumulative of his October 2007 statement that his hand burned and pain shot into his arm while he was on crutches, *see* R. at 3897, and he fails to explain how a seemingly cumulative statement warrants reopening of his claim,[5] *see* R. at 3817-19 (final prior March 2008 RO decision denying service connection for an unspecified hand disability).

---

[5] A claimant may overcome a decision's finality by requesting reopening based on new and material evidence *See Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) (en banc). For a legacy claim such as we have here, new evidence is evidence not previously part of the record before agency adjudicators. 38 C.F.R. § 3.156(a) (2020). New

Because Mr. Sheppard's arguments about a reasonably raised theory related to his unspecified hand disability claim are underdeveloped and he has thus not met his burden of proving prejudice, *see Sanders*, 556 U.S. at 409-10; *Locklear*, 20 Vet.App. at 416, we will not, as he requests, reverse the part of the Board decision declining to reopen this claim. We also will not address any arguments related to *Saunders v. Wilkie*, 866 F.2d 1356 (Fed. Cir. 2018), that Mr. Sheppard referenced in his motion for panel review because he did not raise any such arguments in his briefs.

### C. Reasonably Raised Mental Disease Claim

Finally, Mr. Sheppard argues that the Board failed to address the theory that his service-connected conditions caused, or at least contributed to, his mental disability. Appellant's Br. at 13-16 (noting that he had conveyed many times that pain from his service-connected frostbite residual foot conditions and right hand cyst removal residuals caused or exacerbated his depression).

The Secretary contends that Mr. Sheppard has several non-service-connected conditions that cause pain. Secretary's Br. at 18 (noting that he has chronic pain syndrome and neck, back, and knee pain). The Secretary also asserts that the veteran does not explain how the evidence he references differs from the evidence of record at the time of VA's prior denial. *Id*. at 19. Mr. Sheppard responds that, in an April 2014 statement, he specified that his service-connected feet and cyst removal residuals were factors contributing to his mental disability. Appellant's Reply Br. at 3-4.

In August 2007, Mr. Sheppard stated that he experienced stress and depression after developing frostbite during basic training and because of his in-service hand surgery. R. at 3911 (noting pain and weakness at the time of the surgery). In March 2008, the RO denied service connection for a mental disease, R. at 3817-19, and, because the veteran did not appeal this decision, it became final. Mr. Sheppard fails to explain how his April 2014 statement—that his service-connected frostbite and cyst removal residuals caused or exacerbated his depression—is not cumulative of the August 2007 statement, so that his mental disease claim should be reopened. *See* § 3.156(a); *see also Locklear*, 20 Vet.App. at 416. We find his argument underdeveloped and unpersuasive. *See* R. at 8 (the Board noted that, at the time of the March 2008 decision, there was evidence of the veteran reporting stressful in-service incidents such as having frostbite during basic

---

and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last final denial. *Id*.

training and that, in statements since the last final decision, he repeated similar statements). Accordingly, we will not, as he requests, reverse the part of the Board decision declining to reopen this claim.

### III. CONCLUSION

On consideration of the above, the May 28, 2019, Board decision denying reopening of claims for service connection for an unspecified right-hand disability (other than the service-connected residuals of removal of a ganglion cyst in the right hand) and for a mental disease is AFFIRMED.

BARTLEY, *Chief Judge*, dissenting: I disagree with my colleagues as to the scope of 38 C.F.R. § 20.101(d), and with their determination that it does not apply in Mr. Sheppard's case. Section 20.101(d) is a VA-created rule that affords veterans the right to notice, a hearing, and the opportunity to submit evidence where the Board raises a potential jurisdictional defect, and the Board was bound to apply it here. Thus, I respectfully dissent.

Like the majority, I begin with the plain language of the regulation. The 2018 version of 38 C.F.R. § 20.101(d) indicated that it applied where the Board addresses "questions pertaining to its jurisdictional authority to review a particular case, including, but not limited to, determining whether [NODs] and Substantive Appeals are adequate and timely, at any stage in a proceeding before it, regardless of whether the agency of original jurisdiction addressed such question(s)." 38 C.F.R. § 20.101(d) (2018). For legacy appeals like Mr. Sheppard's, the updated regulation, § 20.104 (d)(1), follows the same rule. Both versions of the regulation stipulate that the special regulatory safeguards are "not limited to" situations involving the timeliness and adequacy of appeal documents. Thus, I would effectuate the plain language of the regulation and hold that former § 20.101(d) and current § 20.104(d)(1), which provide a special process to prevent an appellant being surprised by a Board finding of no jurisdiction, apply to cases where a Board determination as to new and material evidence reveals a potential jurisdictional defect. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (holding that, if a regulation is unambiguous, "[t]he regulation then just means what it means—and the court must give it effect").

Aside from the plain language of the regulation, caselaw supports the conclusion that the regulation applies here. Both the Federal Circuit and this Court have held numerous times that

whether there is new and material evidence to reopen a finally denied clam is a jurisdictional question that the Board must address prior to addressing merits issues. *Prillaman v. Principi*, 346 F.3d 1362, 1367 (Fed. Cir. 2003); *Jackson v. Principi*, 265 F.3d. 1366, 1369 (Fed. Cir. 2001); *Barnett v. Brown*, 83 F.3d 1380, 1384 (Fed. Cir. 1996); *Woehlaert v. Nicholson*, 21 Vet.App. 456, 460 (2007); *Hickson v. West*, 11 Vet.App. 374, 377 (1998); *Butler v. Brown*, 9 Vet.App. 167, 171 (1996).

The majority relies in part on the rulemaking history of § 20.101 to find that it applies to some jurisdictional questions, mainly questions related to appeal documents, but not to the jurisdictional question of whether there is new and material evidence to reopen a final decision. They find it telling that VA described the appeal process and appeal documents when it proposed adding § 20.101(d). However, in that same rulemaking document and immediately after discussing appeal documents, VA states:

> Furthermore, in a case discussing the Board's jurisdiction in another context, the United States Court of Appeals for the Federal Circuit stated that "it is well-established judicial doctrine that any statutory tribunal must ensure that it has jurisdiction over each case before adjudicating the merits, that a potential jurisdictional defect may be raised by the court or tribunal sua sponte or by any party, at any stage in the proceedings, and, once apparent, must be adjudicated." *Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996) (citations omitted, emphasis in original).

66 Fed. Reg. 17,840 (April 4, 2001). The rulemaking for § 20.101(d) cites to *Barnett*, the case that held that reopening assessments as to new and material evidence are Board jurisdictional determinations; references that case as "a case discussing the Board's jurisdiction"; and does not stipulate in either the Federal Register discussion or the plain language of the regulation that the jurisdictional reopening context is excluded from the special procedures outlined in § 20.101(d). Although the majority suggests that the proposed rule cited *Barnett* only to emphasize that a tribunal must ensure that it has jurisdiction over a matter before deciding the merits and not to include new and material evidence determinations in § 20.101(d), there is nothing in the proposed rule that supports that conclusion. Rather, the proposed rule explains that a 1999 General Counsel opinion demonstrates the need for procedural safeguards when the Board dismisses an appeal due to lack of jurisdiction and then references *Barnett* as "another context" when the Board must ensure that it has jurisdiction over a case before adjudicating the merits. These factors indicate that § 20.101(d) procedures apply when the Board encounters a potential jurisdictional defect while assessing whether there is new and material evidence to reopen.

The majority distinguishes between new and material evidence determinations and other jurisdictional matters by asserting that claimants may be surprised when the Board sua sponte raises an issue with appeal documents but should not be surprised when the Board independently considers whether there is sufficient new and material evidence to reopen a claim because it is required to do so. But the Board is likewise required to evaluate the adequacy and timeliness of appeal documents to ensure its own jurisdiction before deciding an appeal, and as with an RO determination that a claimant has submitted new and material evidence sufficient to reopen a claim, the RO's processing and certification of an appeal conveys to the claimant that VA had previously perceived no jurisdictional defect with those appeal documents. An adverse Board determination on either matter—that new and material evidence had not, in fact, been submitted or that appeal documents were deficient or untimely—causes the same unfair surprise because it constitutes a change in VA position on a previously established jurisdictional question. This is precisely the type of unfair surprise that § 20.101(d) was designed to protect against, and the fact that the Board is required to ensure that it has jurisdiction over an appeal before addressing the merits offers no distinction between those two jurisdictional questions.

Additionally, although the majority deduces that the Board's practice of denying rather than dismissing a claim when it does not find sufficient new and material evidence is proof that questions of new and material evidence should be treated differently than questions as to the adequacy and timeliness of appeal documents, the Board's current practice is meaningless in interpreting the scope of § 20.101(d) if dismissing is the proper course of action. The Court in *Woehlaert* couldn't have been more clear: "whether new and material evidence has been presented[] is a jurisdictional issue for the Board" and "an unfavorable answer to this question requires a summary dismissal of the claim" without consideration of the merits. 21 Vet.App. at 460. The proper inference to draw from the Board's current practice of denying, rather than dismissing, appeals when it concludes that reopening is not warranted is not that new and material evidence determinations are not jurisdictional; it is that the Board's current practice is legally incorrect. And to the extent that we have affirmed Board denials of reopening, we too have erred.

The majority's reliance on *Jackson* to reach a contrary conclusion is misplaced. As Mr. Sheppard argues, and the majority notes, the Federal Circuit issued *Jackson* in September 2001. VA adopted § 20.101(d) in October 2001. Chronology alone establishes that *Jackson* does not answer whether § 20.101(d) applies in Mr. Sheppard's case. Moreover, *Jackson* addresses whether

17

the Board violates a veteran's constitutional right to due process when it makes a new and material evidence determination without prior notification. 265 F.3d at 1370-71. In Mr. Sheppard's case the question is whether VA rule § 20.101(d) requires the Board to provide procedural safeguards in excess of those constitutional minimums, and *Jackson* simply does not address that issue.

The majority reasons that, because it believes the evidence required for reopening overlaps with the evidence required to prove the merits of Mr. Sheppard's claim, any error in not applying § 20.101(d) was harmless. I cannot agree for two reasons. First, the reopening statute and regulation, 38 U.S.C. § 5108 and 38 C.F.R. § 3.156, create a "low threshold" for determining whether new evidence creates a reasonable possibility of substantiating a claim. *Shade v. Shinseki*, 24 Vet.App. 110, 117 (2010). Reopening is required if "such evidence, combined with VA assistance and considering the other evidence of record, would raise a reasonable possibility of substantiating the claim." *Id*. That lower threshold distinguishes the evidence involved in reopening a claim from that used to prove a claim on the merits, and the evidence needed to trigger VA's duty to assist for reopening purposes is generally much less strong than that needed to establish the corresponding element of service connection on the merits. Unlike the majority, I am not persuaded that Mr. Sheppard's choice not to present evidence aimed at proving a claim on the merits renders harmless VA's failure to afford him the opportunity to submit new and material evidence at that lower threshold. Holding that error nonprejudicial imposes the higher standard of evidence as to service connection, in this case the link between service and the current disability, on the evidence involved in determining whether there is a reasonable possibility of substantiating a claim. In my view, subjecting a claimant to a higher legal standard than that required by law is not a harmless error. *See Wise v. Shinseki*, 26 Vet.App. 517, 532 (2014) (holding that the Board must apply the correct standard of proof and errs when it requires a greater level of proof than that required by law); *see also Shade*, 24 Vet.App. at 114.

Second, Mr. Sheppard argued that the Board's error in not applying § 20.101(d) was prejudicial because he could have attended a hearing and presented new and material evidence had he known reopening was still at issue. The majority finds this argument unpersuasive because Mr. Sheppard was afforded the opportunity to provide linkage evidence during a hearing but ultimately withdrew that request because he felt that a hearing was unnecessary to decide his case. However, Mr. Sheppard's decision to withdraw his hearing request was made while he was under the impression that VA had reopened his claim and that the hearing would address the merits. His

withdrawal decision was not made in consideration of the evidence necessary to reopen the claim. In *Evans v. Shinseki*, we held that VA's own regulations and the veteran-friendly, non-adversarial appeals process don't permit the Board, ab initio, to dismiss certain issues within an appeal without first affording the veteran the full benefit of procedures mandated by its own regulations. 25 Vet.App. 7, 14 (2011). *Evans* determined that the Board's failure to comply with the procedural requirements of § 20.101(d) is prejudicial when it deprives an appellant of a meaningful opportunity to present argument and evidence on the issues on appeal before the Board issues its decision. *Id*. at 15. That holding should apply with equal force here.

In short, I conclude that § 20.101(d) applies to the Board's jurisdictional determination of whether new and material evidence has been presented and that the Board's failure in this case to afford Mr. Sheppard the benefit of that regulation's procedural protections was prejudicial. I therefore dissent.